### EARLE v. COYLE.

(Circuit Court, E. D. Pennsylvania. June 22, 1899.)

No. 82.

NATIONAL BANKS—SALE OF SHARES BY STOCKHOLDER—LIABILITY FOR ASSESSMENT.

> The owner of shares of stock in a national bank placed them in the hands of auctioneers for sale, delivering to them his certificate, with an assignment and power of attorney to transfer in blank, indorsed thereon and duly executed. The bank was in good repute, and believed by the stockholder to be solvent. The stock was sold at auction, and purchased at its par value by the cashier of the bank, to whom the certificate was delivered at the bank by the auctioneers, with a request that it be transferred. The certificate provided, in accordance with the by-laws, that the stock was only transferable on the books of the bank, and the cashier was one of the officers authorized to make transfers. The by-laws further provided that no officer, except the president and vice president, should become stockholders without the consent of the board of directors. No consent to the purchase of this stock by the cashier was shown by the records of the bank, nor was it ever transferred to him on the books, during nearly four years, and until the failure of the bank, semiannual dividends on the stock were paid to the cashier. The seller had no actual knowledge by whom the stock had been purchased, or that it had not been transferred. *Held*, that, under the circumstances shown, he was not bound to see that the transfer was actually made, and could not be held liable for an assessment made by the comptroller on the stock after the bank became insolvent.[1]

Action by the receiver of an insolvent national bank to recover an assessment made against defendant as a stockholder.

The facts agreed upon by the parties appear in the following case stated:

"The Chestnut Street National Bank was duly incorporated and organized in the year 1887 as a national bank under the laws of the United States, and was located in Philadelphia. Prior to the 13th day of February, 1894, the decedent, D. Lynn Coyle, was the owner of five (5) shares of stock in the said bank. His name was entered in the books of the bank as the owner of said five (5) shares, and he held a certificate therefor in the form hereinafter set out. On the said 13th day of February, 1894, the said decedent placed the said five (5) shares of stock with Barnes & Lofland, auctioneers, doing business at Philadelphia, for sale at public auction, and the same were put up at public sale by them on the said day, and knocked down to William Steele at the price of one hundred dollars ($100) per share, or five hundred dollars ($500) for the five (5) shares. At the time of the sale the said bank was in good credit in the said city, and the said decedent had no reason whatever to believe that it was insolvent, or was about to become so, but, on the contrary, believed it to be sol-

—————————

[1] As to liability of shareholders in national banks, see note to Beal v. Savings Bank, 15 C. C. A. 130.

vent. At the said time the said decedent delivered his certificate for the said five (5) shares of stock to the said Barnes & Lofland, the same having indorsed upon it an assignment of the said shares in blank, with a power of attorney in blank to transfer the same, which assignment and power of attorney were signed by the said D. Lynn Coyle. A copy of said certificate and the said assignment and power of attorney is as follows:

" 'No. 87.

" 'The Chestnut Street National Bank of Philadelphia, 5 Shares.

" 'This is to certify that D. Lynn Coyle is entitled to five shares of the capital stock of the Chestnut Street National Bank of Philadelphia, transferable only on the books of the said bank.

" 'Philadelphia, November 14, 1887.          William Steele, Cashier.
                                        " 'Robert E. Pattison, President.'

"On the said certificate was indorsed the following:

" 'For value received, ———— hereby sell, assign, and transfer unto ———————— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ———————— attorney to transfer the said stock on the books of the within-named company, with full power of substitution in the premises.

" 'Dated Feb. 14, 1894.                              D. Lynn Coyle.
" 'In the presence of J. H. Lofland.
" 'Signature guarantied.                        Barnes & Lofland.'

"The said William Steele, to whom the said stock was knocked down at the sale, was at that time the cashier of the said the Chestnut Street National Bank, and the said Barnes & Lofland supposed that he was purchasing it for William M. Singerly, who was then the president of the bank. The said Barnes & Lofland, on the said 13th day of February, 1894, took the said certificate, indorsed as aforesaid, to the banking house of the said bank, delivered it to the said William Steele, as cashier thereof, and then and there requested him to transfer the said five (5) shares of stock to the purchaser thereof, and left the said certificate with him. The said William Steele before that had paid to Barnes & Lofland the sum of five hundred dollars ($500) in payment for the said stock. The by-laws of the said bank regulating the transfers of its stock are as follows, and were in force from its organization continuously down to its suspension, on December 23, 1897, and have not been changed since, and it is agreed are the only by-laws affecting the question herein:

" 'Art. 12. Certificates of stock signed by the president and cashier, and bearing the seal of the bank, shall be issued to shareholders, and state upon the face thereof that the same are transferable only upon the books of the bank, which transfer shall be in the presence of the president or cashier by the person in whose name it appears, or by his duly-authorized attorney or representative.

" 'Art. 13. In all cases of transfer by attorney, the original letter of attorney, duly proved (or a notarial copy thereof), shall be deposited and remain with the bank; and, in cases of transfer by executors, administrators, guardians, or other legal representatives, duly-authenticated evidence of their authority shall be produced to the bank, at its discretion. No transfer shall be made in any case until the certificates granted to the transferrer be delivered up to the bank, and no transfer shall be made, without the consent of the board, by any shareholder who shall owe the bank any obligation, either as drawer or indorser, that is due and unpaid.'

" 'Art. 15. No officer of the bank, except the president and vice president, shall, without the permission of the directors, hold stock in the bank, nor shall any officer, except the president and vice president, keep an account with the bank. The cashier's official accounts shall be kept in the general ledger.'

" 'Duties of Cashier [from Article 35]. The stock ledger, transfer books, and certificates of stock shall be kept under his immediate direction. He shall affix the seal of the association to all certificates of stock issued by the bank, and to such other documents as the board may order, and shall also direct the working of the bank and the duties of all those employed therein, except the

president. He shall call special meetings of the board when directed by the president.'

"On the 14th day of February, 1894, the said Barnes & Lofland paid the amount for which the said stock had been sold, less their charges, to the said decedent, who never knew who had purchased the said stock, and supposed from that time that the stock was duly transferred to the purchaser on the books of the bank. He died on the 17th of February, 1897, and letters testamentary issued to the defendant. Subsequently, on December 23, 1897, the said bank failed, and suspended payment of its obligations, and was thereupon, by the order of the comptroller of the currency of the United States, declared insolvent, and thereafter, on January 29, 1898, the plaintiff was appointed receiver thereof, and was duly qualified, and is now administering the duties of his trust, and, as such receiver, has brought this action. There is due and owing by the said bank to its creditors debts which the assets are insufficient to pay, and the comptroller of the currency determined that an assessment of 100 per centum upon the par value of each share of the capital stock of the said bank is necessary, and has made an order directed to the plaintiff, making said assessment, and, pursuant to said order, the plaintiff notified the defendant, and demanded of her that she pay the sum of five hundred dollars ($500), as an assessment on the said shares of the stock, on or before the 1st day of April, 1898. The defendant, after the receipt of said notice, made investigation, and ascertained the following to be the facts, and they are agreed upon as the facts in this case: That the said William Steele bought the said shares of stock for himself and for his individual account, and made no transfer thereof to himself in the books of the bank provided for the purpose of making transfers, and the minutes of the board of directors of the bank do not show any permission was granted to him to hold stock in his name. That the said stock still stands in the name of D. Lynn Coyle on the stock ledger of the bank, and no new certificate issued; said certificate No. 87, in the name of D. Lynn Coyle, as herein stated, at the time of, and for some time prior to, the suspension of the bank, and ever since, being in the possession of the Chestnut Street Trust & Savings Fund Company as collateral security for a loan made to William Steele individually by that company, which loan is unpaid. That the said bank declared dividends semiannually to the said five shares of stock after the said 13th day of February, 1894, and paid the same to William Steele. That William Steele, as cashier, had entire supervision of making out checks for dividends, and to whom paid, and signed them as cashier. That the bank did not keep a book in which the said dividends were credited to the various stockholders. That dividends to stockholders were paid by checks for the amounts drawn on the said the Chestnut Street National Bank to the order of the stockholder, and William Steele, as cashier, had supervision of the payment of all checks upon the bank by virtue of his office, but the actual payments were made by the paying teller of the bank. That the dividends declared on the said five (5) shares of stock subsequently to February 13, 1894, were paid to the said William Steele by checks, as aforesaid, to his order, which checks the said William Steele indorsed, and presented to the said bank, and they were paid and retained by the bank."

Asa W. Waters and W. H. Addicks, for plaintiff.
R. M. Schick, for defendant.

McPHERSON, District Judge (after stating the facts). Upon these facts, I am of opinion that judgment must be entered in favor of the defendant. The decision of the supreme court in Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61, seems to be controlling. In that case a stockholder sold his shares at auction, and the auctioneer delivered to the purchaser the certificate therefor, with a power of attorney to transfer, duly executed in blank. The purchaser paid the auctioneer for the shares, and the auctioneer delivered the money to the stockholder. No formal transfer of the shares

was made upon the books of the bank. The stockholder did not know who the purchaser was, or that the transfer had not been formally made, and had no reason to suppose that the duty to transfer had been neglected. Thus far the facts of the case now before us are identical with the facts just stated. In Whitney v. Butler, however, the purchaser was a broker that had been employed by the president of the bank to buy the stock for a customer. In the present case the purchaser was the cashier of the bank, and was himself one of its transfer officers. In both cases the certificate and the power of attorney were delivered to a transfer officer, in order that the proper entries might be made upon the books. In Whitney v. Butler the certificate was delivered to the president, although it was known that he was not the purchaser; but the supreme court held that, as the other requirements of the by-laws had been complied with, the seller had done all that he was required to do, and was not bound to see that the transfer was actually made upon the books. In the case before us the cashier, who was equally with the president an agent to supervise the transfer of stock, was also the purchaser. He was the person to whom the stock was sold by the auctioneer; and, although the auctioneer mistakenly supposed that the purchase was being made on behalf of the president of the bank, this gratuitous supposition is of no weight in the determination of the controversy. In reality the cashier was doing precisely what the apparent facts of the transaction indicated. He was buying the stock for himself, and was paying for it with his own money. When, therefore, the certificate was delivered to him, with a power of attorney, properly signed in blank, the seller had done everything in his power to do, except that he did not insist upon seeing the actual entries made in the transfer books of the bank. Under the facts agreed upon, we do not think he was bound to go so far. Unless the by-law to be considered immediately put the seller upon notice, there was nothing about the transaction, either at the time the sale was made or afterwards, to cause the seller to suspect that the purchase would not be followed by the ordinary formal transfer of title on the books.

The plaintiff seeks to avoid the force of these facts by pointing to the by-law, just referred to, which forbids the cashier to buy the shares of the bank without permission from the directors. He argues that, as the seller was a stockholder, he was bound to know the by-laws, and must therefore have been aware that the cashier could not transfer the stock to himself upon the books of the bank. We do not think that either conclusion is inevitable. It may be a fair subject for dispute whether a stockholder is chargeable with knowledge of such a by-law; but, even if it be assumed that such knowledge should be imputed to Mr. Coyle, we see no reason why he might not properly suppose that the cashier had received permission from the directors to buy the stock. Certainly he was not bound to assume that the cashier was acting in violation of the rules of the bank. On the contrary, the ordinary presumption that men are acting lawfully might, with propriety, lead him to suppose that the cashier had received authority to make the purchase. The fact that the minutes of the directors are silent upon this point is not de-

cisive. In spite of this negative evidence, authority might, nevertheless, have been given, and such a supposition would be strongly supported by the fact that dividends ceased to be paid to the seller, and were thereafter paid to the cashier. The natural inference would be that the bank had either authorized or had ratified the transaction. The by-law was evidently framed for the protection of the bank, and the bank could waive it either by resolution or conduct.

We can see no ground, therefore, upon which to hold that the liability of Mr. Coyle continued. He did everything required by the usual course of business and by the rules of the bank to pass the formal title to the purchaser. He had not only no reason to suppose that the transfer had not been made, but he had every reason to believe that the necessary formalities had been observed. We are not prepared to decide that the seller of shares of a national bank is always bound to see that the transfer is made upon the books, and continues to be liable until such a transfer is made. Sometimes he may be thus bound. But in the present case we think the facts agreed upon furnish a complete defense to the plaintiff's claim. We direct judgment to be entered in favor of defendant.