**CUNNINGHAM v. WRENN et al.**
No. 5499.

District Court, D. Massachusetts.
March 1, 1935.

Leo J. Halloran and A. J. Aldridge, both of Boston, Mass., for plaintiff.

David Stoneman, of Boston, Mass., for defendants.

BREWSTER, District Judge.

This action is brought by the receiver of the Boston-Continental National Bank to enforce the liability imposed by law upon stockholders in national banks. The action was tried without jury.

The controlling facts are as follows: In December, 1930, the Continental National Bank (hereinafter referred to as the Continental) consolidated with the Boston National Bank. After the consolidation, the consolidated banks under the name of "Boston-Continental National Bank" carried on the banking business under the charter and by-laws of the Boston National Bank. According to the plan of consolidation, each stockholder in the Continental National Bank was entitled to receive 3.5 shares of the Boston-Continental National Bank of the par value of $20 each for each share of the Continental of the par value of $100.

The defendants had loaned money to one Balter, a director of the Continental who later became a director of the Boston-Continental National Bank, and had taken as security for the loan 145 shares of stock of the Continental. This director and the president of the Continental were interested in securing control of that bank and, from all the circumstances of the case, it is fair to infer that the proceeds of the loan were used for the purchase of these shares. Certificates representing these shares were issued in the name of Wrenn Bros. & Co. It did not appear upon the certificates that the defendants took the stock as pledgees.

In September, 1930, and before the consolidation had been authorized, the defendants, pursuant to instructions from Balter, sold and received payment for the 145 shares of stock and, for the purposes of effecting

a transfer of the same, had delivered to the purchasers the certificate with the transfer duly indorsed thereon, with a power of attorney to complete the transfer on the books of the bank.

The purchasers of these shares never presented the certificates either for transfer on the books of the Continental or for exchange for shares in the Boston-Continental National Bank.

With respect to 100 shares, certificates representing these shares were delivered by defendants on September 26, 1930, to one Lipp who, acting for the president of the Continental, had purchased them with money advanced by that bank. Lipp delivered the certificates to the president, who retained them for six or eight months and then returned them to Lipp with the request that he hold them for him (the president) until he was ready to take them up.

After the sale by the defendants of the shares and the delivery of the certificates and power of attorney, as above noted, the defendants not only requested Balter to see that the purchasers recorded the transfer, but they made the same request of the president of the bank who, on more than one occasion, promised the defendants that he would see that the matter was given prompt attention.

The Boston-Continental National Bank on December 16, 1931, ceased doing business, and on December 22 a receiver was put in charge by the Comptroller of Currency. The Comptroller, on July 11, 1932, made an assessment upon all the stockholders in the Boston-Continental National Bank, including the defendants, requiring them to pay $20 on each and every share of stock held by them. The declaration alleges that the defendants were, on December 17, and have since been continually and now are, the owners and registered holders of 507.5 shares of the capital stock of the Boston-Continental National Bank, each share thereof having a par value of $20.

These allegations are not supported by the evidence. The defendants at one time held, as pledgees, 145 shares of the Continental which were never exchanged for 507.5 shares to which they were entitled. The defendants were never owners, either actually or upon the records of the defunct bank, of stock in the consolidated corporation. At the time of the consolidation, they owned no shares in the Continental as pledgees or otherwise and had no right to receive any of the shares of the Boston-Continental National Bank. Shares issued by the Boston-Continental National Bank were not shares of the Continental whose corporate existence did not survive the consolidation.

■ Upon this state of facts and the pleadings, it seems to be clear that these defendants cannot be held liable. They never appeared upon the books of the Boston-Continental National Bank as stockholders, and they were not the owners or holders of record of 507.5 shares of stock in the Boston-Continental National Bank, which is the only corporation in receivership.

If, however, as successors to the rights of the Continental, the receiver had proceeded against these defendants as holders of record of 145 shares in that bank, it is my opinion that, on the authorities, the receiver would not be entitled to recover. In September, 1930, before the Continental National Bank had consolidated with the Boston National Bank, the defendants had done all that was necessary to transfer the legal title to the shares to the purchasers. The delivery of the certificates representing the shares indorsed by the seller, with power of attorney to complete the transfer on the books of the bank, completed the transfer. Early, Receiver v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658.

The defendants, as pledgees, were never unqualified owners of the shares, but there are cases intimating clearly that unless it appears upon the certificate or upon the records of the corporation that the stock is held as pledgee's, they may be held liable for the assessment upon stockholders. Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818; Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844.

■ It has recently been said that the general rule is that the person in whose name the stock stands on the books of the bank is the one liable under 12 USCA § 64. Forrest v. Jack, 55 S. Ct. 370, 79 L. Ed. ——.

It is equally well settled that under certain circumstances the actual owner of the stock will be held although he does not appear on the books of the bank as a stockholder. Pauly v. State Loan & Trust Co., supra; Bowden v. Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. Ed. 386; Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266.

■ Thus, if the record holder is legally incapable of assuming the obligations of a

stockholder in a national bank, the actual owner rather than the record owner is held liable. Early v. Richardson, supra; Riley v. Bondi (C. C. A.) 64 F.(2d) 515; Foster v. Chase (C. C.) 75 F. 797; Miller v. Van Zandt (C. C. A.) 67 F.(2d) 901.

And the record holder will not be held if it is shown that he never assented to becoming the record owner of stock. Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; Finn v. Brown, 142 U. S. 56, 12 S. Ct. 136, 35 L. Ed. 936; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Fagan v. Dunn (C. C. A.) 69 F.(2d) 95.

In holding a record holder liable who was not the actual owner, the courts have proceeded upon the doctrine of estoppel. In Whitney v. Butler, supra, page 660 of 118 U. S., 7 S. Ct. 61, 63, the court said: "If a person *permits* his name to appear *and remain* in its outstanding certificates of stock, and on its register, as a shareholder, he is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder. * * *"

To the same effect, see Young v. McKay (C. C.) 50 F. 394; Germania National Bank v. Case, 99 U. S. 628, 631, 25 L. Ed. 448.

In a line of cases following Whitney v. Butler, supra, the courts have declined to impose liability upon the one who had parted with the stock, but who still appeared on the books of the company as the owner, when he has delivered the certificate with a duly indorsed transfer and power of attorney to complete the transfer and has shown reasonable diligence in his efforts to have the transfer recorded. Hayes v. Shoemaker (C. C.) 39 F. 319; Young v. McKay, supra; Snyder v. Foster (C. C. A.) 73 F. 136; Earle v. Coyle (C. C.) 95 F. 99; Dellert v. Stallman (C. C. A.) 29 F.(2d) 236.

The defendants were not required to take the certificates to the bank for the purpose of recording the transfer. Whitney v. Butler, supra; Young v. McKay, supra.

In the case at bar, the defendants did more than was required by the usual course of business. They did all that could reasonably be expected of them to have these transfers registered. They could not compel the purchaser to surrender the certificates in the Continental for new certificates in the Boston-Continental National Bank.

As to the 100 shares, I have no doubt that the facts bring the case well within Whitney v. Butler, supra. The certificates for these shares were delivered to the president of the bank, who was requested by the defendants to transfer them and who promised so to do. It was said in Hayes v. Shoemaker, supra, page 320 of 39 F. that:

"It is of the utmost importance that the liability of stockholders of national banks should be rigorously enforced; but, on the other hand, the court should not treat them with exceptional severity, and apply to their transfers different rules from those which obtain in other business transactions."

Clearly, the doctrine of estoppel cannot be invoked with respect to the transfer of the 100 shares, nor do I think that it could be said that the defendants have so far voluntarily held themselves out as holders of the shares in the Continental that the receiver of its successor can invoke the doctrine with respect to any of the shares.

Upon the question of estoppel I have also attributed some importance to the fact that the defendants were never entitled to any of the 507.5 shares of the Boston-Continental Bank after the consolidation, and that these defendants never permitted their names to appear and to remain on the books of that bank as shareholders.

It follows from the foregoing that judgment for the defendants may be entered.