Cox *v.* Elmendorf.

## Cox *v.* Elmendorf.

### (*Knoxville.* October 28, 1896.)

NATIONAL BANKS. *Assessment of stockholders.*

Although a person's name appears, as that of a stockholder, upon the books of a national bank at the time it becomes insolvent and passes into the hands of a receiver, he is not liable to assessment, as a stockholder, by the Comptroller of the Currency for the debts and liabilities of the bank, where, before the bank's insolvency had occurred, he had, in good faith, sold his stock to another and delivered the certificate, with his blank power of attorney attached, to the president of the bank, who promised to perfect the transfer as directed, even though the president failed to note the transfer on the books of the bank, and the federal statute and the by-laws of the bank, and the certificate upon its face provide that the stock of such bank shall be transferable only on the books of the corporation.

Act construed: R. S., § 5189 (U. S.).

Cases cited: 118 U. S., 660; 73 Fed. Rep., 136.

### FROM WASHINGTON.

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

FAW & COX for Cox.

S. M. ARNELL for Elmendorf.

Cox *v.* Elmendorf.

McAlister, J.   On the twelfth day of November, 1894, the First National Bank of Johnson City was adjudged insolvent by the Comptroller of the Currency and complainant appointed receiver of its assets.   The capital stock of the bank was $50,000, divided into shares of the par value of $100 each. The bank was largely indebted, and, in order to meet its liabilities, the Comptroller of the Currency, under the provisions of the National Banking Act, ordered an assessment of the shares of stock belonging to the individual shareholders to the full measure of the capital stock of the company.   This bill was filed by the receiver against the defendant, Mrs. M. A. Elmendorf, to enforce the collection of $2,000, assessed upon defendant's stock in said bank.   The bill charged that, on November 12, 1894, when the bank failed, the defendant, Mrs. Elmendorf, was the owner of twenty shares of stock, of the par value of $100 dollars each, amounting to the sum of $2,000, which stood upon the books of the bank in her name, and that she had failed and refused to pay the said assessment.   The defendant answered, and denied that she was the owner of the stock at time alleged.

The Court of Chancery Appeals found the facts to be as follows, viz.: "The proof shows that, prior to January 22, 1894, Mrs. Elmendorf was the owner of said shares of stock, but she claims that on that day she sold and transferred the stock to one Preas, Mrs. Elmendorf having agreed to sell

her stock to Dr. Preas in consideration of his taking up or rather assuming a debt of $1,050, which she owed to the bank, and a debt of $250, which she owed to another bank, and paying her the residue in money, and, Dr. Preas having made the necessary arrangements with the respective banks, Mrs. Elmendorf, in company with a kinsman, Mr. Cure, went into the First National Bank of Johnson City, on January 22, 1894, and stated to the president, Mr. Crandall, that she had sold her stock and wanted to transfer it. Thereupon, the following indorsement on the back of the certificate was signed, to wit:

" 'For value received, the undersigned hereby assign and transfer unto J. H. Preas the twenty shares of the within mentioned capital stock, and do hereby constitute and appoint ——— to be —— true and lawful attorney, irrevocably, for and in ——— name and behalf to make the necessary transfers on the books of the company.

" 'Witness my hand and seal, at Johnson City, the twenty-second of January, 1894.

> [Signed]        " 'M. A. ELMENDORF.

" 'Witness:  J. W. CURE.'

" She handed her stock certificate, with this appearing on the back of it, to Mr. Crandall, the president of the bank, and told him she wanted him to make a proper transfer to Dr. Preas and fix it up all right. And he said: 'All right; I

will attend to it.' As a matter of fact, however, he did not make any transfer upon the books of the company, or upon the stock register, and the same day, after this transaction, Dr. Preas went into the bank, and, by an arrangement between him and Mr. Crandall, president of the bank, the stock certificate was attached as collateral to the note of $1,050 which Dr. Preas executed in assuming the previous debt of Mrs. Elmendorf. He subsequently sold the stock to Mr. Penland, and it was attached to a note that Penland owed the bank, and was in that condition when the bank failed. The stock certificate on its face provided that it was transferable only on the books of the corporation, in person or by attorney, in accordance with the by-laws of the corporation, and on surrender of the certificate. It is proper to say that at the failure of the bank Mrs. Elmendorf's name still remained upon the stock register among the rest of the stockholders."

The question presented for determination is whether, upon the facts stated, Mrs. Elmendorf is liable as apparent owner of the stock for the assessment made by the Comptroller of the Currency.

In the case of *Whitney* v. *Butler*, 118 U. S., 660, the question before the Court was "whether under the statute and the facts especially found, the defendants were liable to be assessed for the debts, contracts, and engagements of the bank. The statute declares that the capital stock of a national bank shall be transferable on its books in such

manner as may be prescribed in the by-laws or articles of the association; every person becoming a shareholder by such transfer succeeding, in proportion to his shares, to all the rights and liabilities of the prior holder." R. S., § 5189.

The by-laws of this association provide that its stock shall be assignable only on its books, subject to the restrictions and provisions of the statute; that a transfer book be kept, in which all assignments and transfers of stock shall be made; that each certificate should state on its face that the stock is transferable only on the books of the bank, and that when a transfer is made the certificate shall be returned and canceled and a new one issued.

The Court of Chancery Appeals found there had been no formal proof of the by-laws of the company in the present case, but that, for the purposes of this case, they assumed the statement in the stock certificate as sufficient proof of the by-laws upon this subject.

In the case already cited Mr. Justice Harlan said: "In the case before us the personal presence of defendants at the bank was not required in order to secure their release from liability as shareholders. Besides, the certificate of stock authorized them to act by attorney. Through their agents, the brokers, who sold the stock, and through whom they received the money, paid for it. They surrendered the certificate and power of attorney to the president of the bank, he receiving them to acknowledge not

only that defendants had parted with all title to the stock, and had been paid for it, but also that it had been purchased at public auction by Eager; he knew equally well that the surrender of the certificates and the delivery of the power of attorney and the certificate from the Probate Court could only have been for the purpose of having it appear by means of a transfer on the books of the company that Whitney's executors were no longer shareholders. The right to have the transfer made, and thereby secure exemption from further liability, was secured to the defendants, both by the statute and by-laws of the bank. They did all that was required by law as preliminaries to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary form of entry on its books. If, when the agents of defendants delivered the certificate and power of attorney to the president of the bank, the latter had given any intimation of a purpose not to make the transfer promptly, or had avowed any intention to postpone action until a sufficient amount of stock was obtained to fill Coburn's order, it may be that the failure of defendants to take legal steps to compel a transfer, would, in favor of creditors of the bank, have been deemed a waiver of the right to an immediate transfer on the stock register. But no such intimation was given; no such avowal was made. No objection was made to the power of attorney as to the discharge of defendants from liability. So far

as the record shows, nothing was said or done by the bank's officers to raise a doubt in the minds of defendants' agents that the transfer would be made at once.

The Court concludes, viz.: "We are of opinion that within a reasonable construction of the statute, and of all the objects intended to be accomplished by the provision imposing liability upon the shareholders for the debts of national banks, the responsibility of the defendants must be held to have ceased upon the surrender of the certificates to the bank; that the delivery to its president of the power of attorney was sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock on the books of the association to the purchaser."

In the case of *Snyder* v. *Foster*, 73 Fed. Rep., 136, it appeared that one Snyder subscribed for fifty shares of the stock of a national bank, borrowing the money to pay for them from Collins, the cashier of the bank. As collateral security for the money so borrowed, Snyder indorsed over the certificate to Collins, and left it with him. A few months later Snyder sold the stock to Collins for the amount of the loan and accrued interest, the certificate remaining in Collins' hands. The bank was solvent at the time, and so continued for five years, during which Collins collected the dividends on the stock, as shown by the bank's dividend books, but the stock was never actually transferred to Collins on the books of the bank. The by-laws of the bank

provided that dividends should be paid to the stockholders in whose name the stock should stand; that certificates should be issued by the president and cashier, and that when stock was transferred the certificate should be canceled and a new one issued. Long after the sale of Snyder's stock to Collins, the bank became insolvent, an assessment was made upon the stockholders, and the receiver of the bank, finding Snyder's name as a stockholder on the books of the bank, brought suit against him. Collins was dead at the time of the trial. It was held by the United States Circuit Court of Appeals for the fifth circuit, that it might be inferred as a fact from the evidence, that the bank had notice of the transfer of the stock by Snyder to Collins, and the termination of Synder's relations to the bank as a stockholder, from which fact the legal presumption would follow that the bank would cause such acts to be done in relation to the transfer as its officers were called on to do, and that the jury should be permitted to draw such inferences.

Judge Bourman, in delivering the opinion of the Court in the case last cited, made this observation respecting the case of *Whitney* v. *Butler*, to wit: "It seems to have been the purpose of the Court in that case to ground the opinion largely, if not entirely, on the broad doctrine that a shareholder in good faith, who has done all that a prudent business man should do, will not be held responsible for the neglect and carelessness of an officer of the bank."

We think these principles are conclusive of this case, and that Mrs. Elmendorf, having sold her stock in good faith and surrendered the certificate to the president of the bank, with a blank power of attorney attached, upon the promise of that officer that he would attend to the transfer, she is absolved from any liability incident to the subsequent ownership of that stock by other persons.

Affirmed.