## WARREN v. NIX.

### Opinion delivered January 16, 1911.

1. BANKS—DEPOSIT OF PUBLIC FUNDS.—Under Kirby's Digest, § 1990, authorizing collectors of taxes, county treasurers and treasurers of cities and towns to "deposit the public funds in their custody in incorporated banks for safekeeping," and providing that the said officers and the sureties on their official bonds and the bank and its stockholders "shall be liable for all funds that such bank on demand shall fail to pay to the person entitled to receive the same," a county treasurer is authorized to make a general deposit of the public funds in his hands in an incorporated bank. (Page 379.)

2. SAME—AUTHORITY OF TREASURER TO DEPOSIT PUBLIC FUNDS.—Kirby's Digest, § 1991, prohibiting any person from borrowing public funds for the purpose of converting or applying same to his own use or benefit, or for the benefit of any other person or corporation, does not prohibit a county treasurer from making a general deposit of public funds in his hands for safekeeping. (Page 384.)

3. SAME—FAILURE TO RETURN PUBLIC FUNDS—WHO MAY SUE.—The county treasurer, being the officer who is authorized by statute to receive and retain the public funds of the county, is authorized to sue a bank to recover public funds which he had deposited in said bank and which it had failed to pay on demand. (Page 384.)

4. PARTIES—JOINT LIABILITY.—If Kirby's Digest, § 1990, in providing that any officer therein named who shall deposit public funds in any incorporated bank for safekeeping, together with the sureties on his official bond, shall, with the bank and its stockholders, be liable for all funds that such bank on demand shall fail to pay, etc., intended to impose upon the officer, his bondsmen, the bank and its stockholders a joint liability for the funds so deposited, a recovery may be had from all or any of them under Kirby's Digest, § 6010, providing that "where two or more persons are jointly liable by contract, the action may be brought against all or any of them, at the plaintiff's option." (Page 384.)

5. BANKS—DEPOSIT OF PUBLIC FUNDS—LIABILITY.—Kirby's Digest, § 1990, providing that *"collectors of taxes, county treasurers and treasurers of cities and incorporated towns may deposit the public funds in their*

*custody in incorporated banks for safekeeping; and the said officers and the sureties on their official bonds, the bank and the stockholders of the bank shall be liable for all funds that such bank on demand shall fail to pay to the person entitled to receive the same,"* intended to fix upon the bank and its stockholders a primary liability for public funds so deposited, leaving the officer and his sureties secondarily liable. (Page 385.)

6. SAME—PUBLIC FUNDS—LIABILITY OF STOCKHOLDER—TRANSFER OF STOCK. —Where the holder of stock in a bank transferred such stock to another, and by power of attorney duly authorized the transfer thereof upon the books of the corporation, and placed such power of attorney in the hands of the proper official of the bank to note same on the books, he will not be held liable for the subsequent debts of the bank, though that official neglected to make such transfer upon the bank's books. (Page 386.)

7. SAME—DEPOSIT OF PUBLIC FUNDS—LIABILITY.—Section 1990 of Kirby's Digest, providing that banks and their stockholders shall be liable for all public funds that such banks "on demand shall fail to pay to the person entitled to receive the same," fixes the time when such liability arises, namely, when default in payment is made, and determines that those only shall be liable as stockholders who are such at the time of default. (Page 387.)

8. SAME—TRANSFER OF STOCK—VALIDITY.—A transfer of stock in a bank by a stockholder thereof must be made honestly and in good faith before it will be effective to release him from future liability as a stockholder upon the bank's failure to pay public funds on demand. (Page 388.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; reversed in part.

*J. W. Warren, pro se.*

*Morris M. Cohn* and *R. L. Montgomery* for appellant Geo. W. Rogers.

1. Rogers, having ceased to be a stockholder on January 8, 1909, by sale of his stock to J. O. Smith on that day, is not liable. He transmitted to Smith his certificate of stock, duly signed in blank—did all that he was called upon to do to have the stock transferred to the purchaser. The transfer of a certificate of stock, with the power of attorney signed in blank by the holder, transfers to the purchaser the stock so evidenced, in the ordinary course of business. Angell & Ames, Corp. (10 ed.), § 564; 1 Morawetz, Corp. § § 164, 185. It is the duty of the transferee to see that the transfer is noted on the books of the company. 3 How. (U. S.) 483; 1 Morawetz, § 185; 2 Thomp-

son, Corp. § § 2593, 2594. See also 118 U. S. 655; 132 N. Y. 250; 39 Fed. 319; 50 Fed. 394; 75 Ark. 148.

Before the ruling of the lower court can be sustained, it must be presumed (there is no evidence) that Rogers knew the bank was then insolvent, that it had public funds, that it was unable to pay same, that he sold his stock to avoid liability for such funds, and that he knew how J. O. Smith stood on the books of the bank.

2. Appellee is not entitled to maintain this suit. The statute provides that county treasurers, etc., may deposit public funds in their custody in incorporated banks *for safekeeping*. Kirby's Dig., §· 1990. In this case, contrary to the above provision of the statute, the evidence is indisputable that these funds were deposited and received as a general deposit. 36 Ark. 293; 69 Ark. 406; 41 Ark. 393. A deposit for safekeeping would have been a special deposit. 5 Ark. 297; 60 N. W. 822. He who receives anything for safekeeping must return the thing received, when demanded. Story on Bailments, § § 4, 41, 42, 61; 60 N. W. 822, 823. If there was any liability, it fell upon the treasurer as well as the stockholders, and he could not maintain an action against them. 13 Ark. 28; Bates, on Partnership § 900; Dicey, on Parties, 79; 125 Mass. 593; 28 Me. 389; 14 N. H. 129.

3. If Rogers had been a stockholder, still he was not liable, because no demand was ever made on the bank for the fund in controversy. A mere inquiry by Nix to know when the money would be paid, at a conference with the cashier and a director of the bank, did not constitute a demand of payment. Moreover, he was not the proper party to make the demand; but the county, the real party in interest, through its court, or some person directed by it, should have made the demand. 13 Cyc. 813; 5 Wyo. 199; 38 Pac. 926; 29 L. R. A. 226.

*Richard M. Mann* for appellant T. M. Wallace.

One cannot in a court of law maintain a suit as plaintiff upon an unpaid demand against others as defendants with whom he is jointly liable; and this is true, even though he is plaintiff in one capacity and debtor in another. The statute, Kirby's Dig. § 1990, imposes liability upon "said officers, and the sureties on their official bonds, the bank and the stockholders of the

bank." 15 Am. & Eng. Enc. Pl. & Pr. 481-2; 1 Cyc. 644; 53 N. E. 303; 39 Am. Dec. 628; 17 *Id.* 569; 12 *Id.* 684; 27 S. E. 352; 38 S. E. 510; Kirby's Dig. § 990.

*Powell & Taylor* and *C. W. McKay,* for appellant J. O. Hutcheson.

1. The treasurer and his official bondsmen are jointly liable with the bank and its stockholders. The statute, Kirby's Dig. § 1990, is in derogation of the common law. For rules of construction of such statutes, see 4 Thompson on Corp (2 ed.), § 4774; 192 U. S. 386; 79 N. W. 696; 9 Cush. (Mass.) 192; 71 Ark. 556; 82 Ark. 247; 101 U. S. 557; 74 Ark. 302; 71 Ark. 561; 75 Ark. 542; 65 Ark. 521; 113 U. S. 310; 32 U. S. (Law. Ed.) 1060; 34 *Id.* 767; 46 Ark. 159; 91 Ark. 8. He was therefore not the proper party to bring this action.

2. The stockholders are not liable because the treasurer made a general deposit of the funds. Before any liability could attach to the stockholders, he would have to make a special deposit of the public funds in his hands in the bank. Kirby's Dig. § § 1163, 2019, 1991. A general deposit is said to be equivalent to a loan. 43 Ala. 115-138; 58 Ky. (1 Metc.) 415-417. If the words "for safe-keeping," used in § 1990, are decided to be superfluous, and if a general deposit is intended, then that section and section 1991 are repugnant, and the latter is rendered meaningless. For distinction between a general and a special deposit, see 60 N. W. 822, 823.

3. Hutcheson is not liable, because he was not a stockholder at the time the funds were deposited, nor at any time thereafter.

When a stockholder sells his stock and indorses it for the purpose of transferring title to the transferee, and delivers it to the officers of the bank whose duty it is to make the proper transfers on the books of the corporation, he is relieved from further liability. 30 U. S. (Law. Ed.) 266; 95 Fed. 99; 10 Cyc. 716, 717. Section 849, Kirby's Dig., is intended for the protection of the individual creditors of the stockholders. The transferrer is in no position to see to the recording of the certificate of transfer. That is delivered to and is in the possession of the transferee.

*Henry Moore, Jr,* for appellee.

This case was tried, by consent, before the court. His findings of fact are as binding as the verdict of a jury. The court found as a matter of fact that both Geo. W. Rogers and J. O. Hutcheson were stockholders of the bank at the time of its failure. As to Rogers, all the facts and circumstances appearing by the testimony show that he had knowledge of the condition of the bank on the date of the pretended sale, and that in fact no sale was made, but he procured from Smith the money of the bank for the stock he owned. Hutcheson is estopped to deny that he is a stockholder, as between himself and the creditors of the bank, because, while he claims that he sold his stock in January, 1907, yet on February 15, 1907, a month later, in the statement showing the condition of the bank and the names of the stockholders, his name appears as the owner of five shares of the stock. 118 U. S. 660; Kirby's Dig. § 848. Moreover, he knew that the stock had not been transferred into the name of the alleged purchaser, and that the certificate of transfer had not been deposited with the county clerk, as required by Kirby's Dig. § 849, because he kept his original shares of stock in his possession, instead of transferring them to Smith.

2. The funds were deposited in the bank as a general deposit, and properly so under the statute. Kirby's Dig. § 1990. The words "for safekeeping," in this statute are used in their ordinary and common meaning, and these funds were placed in the bank for safekeeping, just as the funds of any other person or corporation would have been placed in a bank for safekeeping and to avoid the danger of fire, theft, etc. "It is the duty of the courts to construe an act as it reads, if it can be done without involving absurdities." 74 Ark. 302. See also 65 Ark. 521.

3. Appellee is entitled to maintain this suit as treasurer of the county. Kirby's Dig. § 1990; 15 Enc. Pl. & Pr., 724-5. And the fact that after the bank's failure he obtained funds elsewhere, or from his own means, out of which he paid the demands coming against him as treasurer, does not preclude him from maintaining the suit. Kirby's Dig. § § 1165, 1166. Further, as to his right to maintain suit, see 39 Ark. 174; 43 Ark. 41; 15 Enc. Pl. & Pr. 724-6; Kirby's Dig. § § 4420, 6010; 62 Ark. 391.

FRAUENTHAL, J.  This was a suit brought by Isaac L.
Nix, as treasurer of Lafayette County, to recover from the
stockholders of an incorporated bank the public funds belonging
to said county which he as such treasurer had deposited in said
bank, which later became insolvent and failed to pay same on
demand.

In 1908 said Nix was elected treasurer of said county, and
duly qualified as such officer on November 1, 1908.  His prede-
cessor in office, prior to that date, deposited the public funds of
said county in the Merchants & Farmers Bank of Lewisville,
Ark., a duly incorporated bank, and on that day gave to said
Nix as treasurer his check on said bank for the amount of said
public funds then on deposit therein.  This check was duly
cashed by said bank, and the funds of the county were then left
by said Nix as treasurer on deposit in said bank, subject to
payment upon his check as such treasurer.  On that day the
deposit amounted to $13,149.63.  From time to time he drew
upon said deposit by check as such treasurer until January 18,
1909.  The bank continued to pay to depositors until January
20, 1909, when it suspended and made a general assignment.
Subsequently, said treasurer demanded payment of said public
funds from the cashier of said bank; and on the trial of this
cause the assignee of said bank testified that it had no moneys
or assets with which to pay said public funds remaining on
deposit, which, at the date of its suspension and failure, amounted
to $6,281.28.

The case was tried by the court sitting as a jury, who ren-
dered judgment for the above amount in favor of said treasurer
and against all the stockholders who had been sued.  Four of
said defendants have appealed from said judgment to this court.
All the appellants contend that the judgment should be re-
versed upon grounds that were common defenses to all of them;
and two of the appellants, J. O. Hutcheson and G. W. Rogers,
assign as a further ground for reversal the plea made by them
that they were not stockholders of the bank at the time of its
suspension and failure.

It is contended by counsel for all the appellants that ap-
pellee made a general deposit of the public funds of said county
in said bank, which under the law they claim he had no right

to do; and for that reason they insist that they are not liable for the failure of the bank to return such funds.

This suit is based upon section 1990 of Kirby's Digest, which is as follows: "It shall be unlawful for any officer of this State, or of any county, township, city or incorporated town in this State, or any deputy, clerk or other person employed by such officer, having the custody or possession of any public funds by virtue of his office or employment, to use any of such funds in any manner whatsoever for his own purpose or benefit, or to loan any of such funds to any person or corporation whomsoever or whatsoever, or to permit any person or corporation whomsoever or whatsoever to use any of such funds, or to pay or deliver any such funds to any person or corporation, knowing that he is not entitled to receive it, or for any such officer to wilfully fail or omit to pay over any such funds to his successor in office at the expiration of his term of office; *but collectors of taxes, county treasurers and treasurers of cities and incorporated towns may deposit the public funds in their custody in incorporated banks for safekeeping; and the said officers and the sureties on their official bonds, the bank and the stockholders of the bank, shall be liable for all funds that such bank on demand shall fail to pay to the person entitled to receive the same.*"

It is urged that this statute did not give authority to the county treasurer to make a general deposit of the public funds in an incorporated bank, but only gave him the right to make a special deposit of such funds. It is claimed that by virtue of this statute he could only make a deposit of such funds for safekeeping, and that this means that he should make a deposit of that nature which would still continue in him the title to and the control over the specific funds, and would not permit the use thereof by the bank, but would require the return of the identical money deposited by him in the bank. In this connection it is argued that when a general deposit is made in a bank the relation between the depositor and the bank is that of creditor and debtor; and it is urged that a general deposit is simply a loan to the bank, and not a deposit for safekeeping. But we think there is a clear distinction between a loan and a general deposit. When a loan is made, the money is borrowed for a fixed time, and the borrower promises to repay such

amount at a fixed future date. But a general deposit is payable upon demand; in effect, the money thus deposited is kept under the control of the depositor, because it must be kept at all times subject to be paid upon his check. The money so deposited, or its actual equivalent, is returned to the depositor upon demand.

Banks are recognized in the commercial world as depositories where money is safely kept which, upon demand, will be returned in kind. It is universally understood that one of the chief purposes of the depositor in placing his funds in a bank is to put them where they will be safely kept. Ordinarily, the depositor understands that he is leaving his money for safekeeping, to be returned upon his order upon demand, and not that the identical pieces of money left with the bank will be returned, but only its equivalent; he does not ordinarily understand that he is making a loan to the bank when he makes a deposit therein.

In the case of *Allibone* v. *Ames,* (South Dakota), 33 L. R. A. 585, in discussing the general nature of a deposit and in pointing out the distinction between it and a loan, the court said: "The transaction was one peculiar to banking business—a general deposit in which the return of the identical coin or currency was not intended. For some purposes such deposits are spoken of as equivalent to loans, because, like loans, they create the relation of debtor and creditor. * * * But it does not follow that every general deposit is a loan. * * * A voluntary deposit for exchange is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party—the depositary being only bound to return a thing corresponding in kind to that which is deposited. * * * When the personal property involved is money, it may be difficult, under some circumstances, to determine whether the transaction should be called a deposit or a loan; but the two are not the same, and are never so regarded by any one in business, or the ordinary affairs of life. Certainly, the thousands who daily deliver money to banks for safekeeping and return in corresponding currency do not regard the transaction as a loan, nor do they so speak of it."

It is not only generally understood that a deposit is the placing of money in a bank for safekeeping, but this is also the

legal aspect of its character. In the case of *Law's Estate,* 144 Pa. St. 499, it is thus defined: "A deposit is where a sum of money is left with a banker for safekeeping, subject to order. and payable, not in the specific money deposited, but in an equal sum. * * * Whilst the relation between the depositor and his banker is that of debtor or creditor simply, the transaction cannot in any proper sense be regarded as 'a loan, unless the money is left, not for safekeeping, but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan."

In the case of *State* v. *McFetridge,* 84 Wis. 473, the same principle was applied in adjudging that general deposits were not investments, within the meaning of the statutes of that State forbidding such by the State Treasurer. In that case the court held in effect that the depositing officer did not lose control over a general deposit, and that it was in effect made for safekeeping. The court said: "By such a deposit the depositor does not lose control of the money, but may reclaim it at any time. True, he loses control of the specific coin or currency deposited, but not of an equal amount of coin or currency having the same qualities and value, which, as we have seen, is all that is required of him." See also to the same effect, *Hunt* v. *Hopley,* 120 Iowa 695; 2 Words & Phrases 1998; 9 Am. & Eng. Enc. Law. 291.

A deposit is therefore, in law as well as in fact, the placing or leaving of a sum of money with a banker for safekeeping. If the agreement between the parties is that the identical coin or currency shall be laid aside and returned, then it is a special deposit. But if the agreement is that the money shall be returned, not in the specific coin or currency deposited, but in an equal sum, it is a general deposit. In either case the money is deposited for safekeeping, and the only distinction between the two kinds of deposit is in the character of the return that is to be made thereof to the depositor; whether it shall be returned in the identical thing deposited or in kind.

The above statute does not prescribe that the title to public funds deposited in an incorporated bank shall be retained in the officer entrusted with such funds, or that the identical money placed in the bank shall be returned.. On the contrary, the

statute in effect prescribes that the money shall be paid upon demand, just as in cases where general deposits are made, because it provides that the liability therefor shall arise only when such funds are not paid on demand. The liability is made by the statute to arise upon the failure to make payment, and not upon a failure to return the identical coin or currency deposited with the bank. We think that the Legislature intended by the provisions of this statute to permit the officers therein named to make a general deposit of the public funds in their custody in incorporated banks.

The above section 1990 of Kirby's Digest was enacted in 1903, by an act which amended section one of an act, approved April 8, 1891, which had made it unlawful for any officer therein named to use the public funds for his own purposes, or to lend or deposit same with any person or corporation (Acts 1903, p. 142; Acts 1891, p. 230). In 1903 the Legislature amended said act of 1891 by simply adding the words which appear in italics above in section 1990, Kirby's Digest. Prior to said act of 1903 it was unlawful for a county treasurer to make a general deposit of money in a bank. But he had then the right to keep the identical funds for safekeeping in such place as he chose; and he could have kept them in a vault in his own office, or in the vault of some bank. If, after the passage of said amendment, he only had the authority to keep the identical funds in the vault of some bank as well as in a vault which he might select at some other place, then there was no necessity for the passage of such amendment, because he had that right and authority before the passage thereof. The object of the amendment was certainly to make a change in the law as it then was relative to the character of the deposit of the public funds. Before the passage of the amendment the county treasurer had the right to make a special deposit of the public funds, even in the vault of an incorporated bank. The above amendment simply enlarged this privilege and permitted him to make a general deposit of such funds in an incorporated bank. For the protection of the funds thus deposited, it made the bank and its stockholders liable, and thus gave additional security for its repayment. We are therefore of the opinion that the county treasurer was, by

the above statute, authorized to make a general deposit of the public funds in his custody in said incorporated bank.

We do not think that he was prohibited from making such deposit by section 1991 of Kirby's Digest, which was enacted as a part of the act of 1891. By that section he is prohibited from making an ordinary loan; and at the time of its passage in 1891 from making a general deposit. But the above act of 1903, amending said act of 1891, manifestly indicates a purpose on the part of the Legislature to make a distinction between a deposit made in a bank for safety and convenience and an ordinary loan. By that amendment any prohibition to make such general deposit in an incorporated bank for safekeeping was removed. *State* v. *Rubey,* 77 Mo. 610.

It is urged that the county treasurer was not a proper party to institute this suit. It is contended that by virtue of said statute (Kirby's Digest, § 1990), the county treasurer and the sureties on his official bond were jointly liable for said public funds with said bank and its stockholders, and the defendants asked the lower court to make the treasurer and his said bondsmen parties to the suit, so that they could be compelled to make contribution to any judgment that might be recovered against the defendants. We think that the county treasurer was the proper party to institute this suit. It has been held by this court that the county treasurer is a proper party to institute suit for the recovery of the public funds belonging to the county. See *Hunnicutt* v. *Kirkpatrick,* 39 Ark. 172; *Pettigrew* v. *Washington County,* 43 Ark. 41.

By section 1159 of Kirby's Digest the county treasurer is made the proper party to receive all moneys payable into the county treasury. By section 6002 it is provided that a trustee of an express trust, a person in whose name a contract has been made for the benefit of another, or any officer, may bring an action without joining with him the person for whose benefit it is prosecuted. The county treasurer is the officer who is authorized by statute to receive and retain the public funds of the county, and he is therefore the proper party to institute an action for the recovery thereof.

If it should be held that by virtue of said above statute (section 1990 of Kirby's Digest) a joint liability was imposed

upon the county treasurer, his bondsmen and the bank and its
stockholders, still such liability would also be several as well as
joint, and the proper party could sue any or all those that were
liable at his election.   By section 4420, Kirby's Digest, it is
provided: "Joint obligations shall be construed to have the same
effect as joint and several obligations, and may be sued on and
recoveries had thereon in like manner."   By section 6010, Kir-
by's Digest, it is provided: "Where two or more persons are
jointly bound by contract, the action thereon may be brought
against all or any of them, at the plaintiff's option."   And we
think that this applies equally to those cases in which there is a
joint liability created by statute.  See 15 Enc. Pl. & Pr., 724-726.

But we are also of the opinion that it was the purpose of
the Legislature by the enactment of said section 1990 of Kirby's
Digest to fix a primary liability for the public funds deposited
in an incorporated bank upon the bank and its stockholders, and
to simply continue the liability of the county treasurer and his
bondsmen therefor.   The treasurer and his bondsmen are by
law and the terms of his bond liable for all the public funds
which come into his hands as such treasurer.   By this statute
he is permitted to deposit the public funds in his custody in an
incorporated bank.   It was the obvious purpose of this statute
to provide that the treasurer and his bondsmen should not be
released from that liability for the public funds by reason of the
permission granted by this statute to deposit those funds in an
incorporated bank.   The liability of the treasurer and his bonds-
men was only continued, and was not lessened or increased by
the enactment of this statute.   If any loss  was  incurred  by
reason of the failure of the bank in which said funds were
deposited, such loss would not arise by reason of any default
or act of the county treasurer, but it would spring from the
default and wrong of the bank and its officers.   The stockhold-
ers of the bank were benefited by such deposits, by receiving
the profits accruing therefrom, and the officers through whose
dereliction the loss of such deposits would occur were the per-
sons who were selected by the stockholders themselves.   It was
therefore but just and reasonable that the bank and its stock-
holders should be made responsible for the public funds de-
posited in such bank, and we think it was the intention of the

Legislature by the provisions of this statute to make them primarily liable therefor.

It is urged by appellants Hutcheson and Rogers that they sold and transferred their stock in the bank prior to its suspension and failure, and were not stockholders at the time that default was made by said bank to pay said public funds on demand; and on this account they urge that they are not liable therefor. It appears from the testimony that Hutcheson became a stockholder of the bank sometime prior to 1903, and that Rogers became a stockholder theerof in 1905. Only two certificates were filed in the office of the county clerk by the officers of the bank in compliance with section 848 of Kirby's Digest, showing the condition of the bank and the names of its stockholders; one was filed in February, 1903, and the other in 1907. In the first certificate Hutcheson appears as a stockholder of the bank, and in the latter both Hutcheson and Rogers appear as stockholders thereof. Hutcheson claims that he sold his stock in 1907, and Rogers claims that he sold his stock on January 8, 1909; but no certificate of either transfer was ever deposited with the county clerk as provided for by section 849 of Kirby's Digest.

It appears from the testimony that Hutcheson sold his stock in the bank to J. O. Smith, its cashier, in January, 1907, and in March or April, 1907, transferred the same to him and duly executed a power of attorney authorizing the transfer thereof on the books of the corporation, and placed such power of attorney in the hands of the proper official of the bank to note same on the books. It does not appear whether or not this was done; in fact, it does not appear from the testimony that the bank kept any book where such transfers were made or registered. But we think that the evidence shows that Hutcheson sold his stock in good faith, and entirely severed his connection as a stockholder with such bank, and that he took all the steps required of him to make a valid transfer of the stock.

It is not necessary, in order to make a valid transfer of shares of stock in an incorporated bank or other corporation, so as to release the vendor from further liability as a shareholder, that a certificate of such transfer must be deposited in the office of the county clerk as provided for by section 849

of Kirby's Digest. The provisions of that statute were enacted only for the purpose of protecting the creditors of the vendor against secret and fraudulent sales of his stock; and it is the duty of the transferee to have such certificate of transfer deposited with the county clerk in order to protect him against the debts of his vendor. Where the shareholder has done everything that a careful and prudent business man should do in making the transfer of his stock, which he has sold in good faith, he will not be held responsible for the neglect or carelessness of the officers of the bank in failing to make a transfer thereof upon the books of such bank. If the sale of the stock has been made honestly and in good faith, and the vendor has duly transferred the shares of stock to his vendee and given proper authority to make the transfer thereof upon the books of the corporation, and placed such authority in the hands of the proper official to enter same upon such books, then he has done all that can be required of a careful and prudent business man in order to make such transfer. This is the view that has been taken by the Supreme Court of the United States relative to the transfer of shares of national banking corporations, and we see no reason why the same principle should not be applicable to other corporations. See *Whitney* v. *Butler,* 118 U. S. 655; *Snyder* v. *Foster,* 73 Fed. 136.

In the case of *Snyder* v. *Foster, supra,* the court, in speaking of this view expressed in the case of *Whitney* v. *Butler, supra,* said: "It seems to have been the purpose of the court in that case to ground the opinion largely, if not entirely, on the broad doctrine that a shareholder in good faith, who has done all that a prudent business man should do, will not be held responsible for the neglect and carelessness of an officer of the bank." See also *Tucker* v. *Gilman,* 121 N. Y. 189; *Harper* v. *Carroll,* 66 Minn. 487; *Miller* v. *Great Republic Ins. Co.,* 50 Mo. 55; *Cox* v. *Elmendorf,* 97 Tenn. 518; *Foster* v. *Row,* 120 Mich. 1.

Section 1990 of Kirby's Digest provides that the stockholders of the bank shall be liable for the public funds therein deposited when the bank shall fail to make payment upon demand, and this in effect fixes the time when such liability arises, and that is when default in payment is made; this also determines that such liability is against only those who are stock-

holders at the time of such default. The liability for said public funds attaches only against those who are actually stockholders of the bank at the time of the default of the bank, which prior to that time had been a going concern—that is to say, at the time that such bank, which had prior thereto been promptly paying deposits on demand, failed to pay on demand such public funds to the person entitled to receive same. The principle is thus stated in the case of *Foster* v. *Row, supra:* "When, however, the Legislature has not plainly so attempted to preserve or retain for creditors a liability and remedy which, but for the law of corporations, would exist, but has in the incorporating act added a liability, limited, peculiar, purely statutory and not in any sense preservative of common-law liability, the remedy provided being for all creditors, or all of a class of creditors, enforceable in their joint interest against the body of stockholders, then the liability attaches when the right of action—the default—occurs, and is against those who are the stockholders."

But the sale and transfer of the shares of stock in a bank by a stockholder thereof must be made honestly and in good faith before it will be valid and effective so as to release him from future liability as a stockholder thereof. Such sale and transfer would not be made in good faith if at the time such stockholder knew that the bank was then insolvent, or if he made such sale for the purpose of escaping such liability. Where, however, a stockholder of a bank has honestly and in good faith sold his shares of stock therein, and has taken all the steps that a prudent business man should take in order to effect the transfer thereof, he is released from further liability as a stockholder of such bank. We are of the opinion that the uncontroverted evidence shows that Hutcheson sold his shares of stock to Smith in good faith, and gave authority to make the proper transfer thereof, and delivered same to the proper officer of the bank for that purpose. He did all that a prudent business man should have done to make a valid transfer of the stock. The sale and transfer was made in 1907, and long prior to the time when the public funds were deposited in the bank. We are therefore of the opinion that Hutcheson was not liable to appellee as a stockholder of said bank.

But a majority of the court are of the opinion that there is some legal evidence to sustain the finding of the lower court that on January 8, 1909, the time when Rogers sold his shares of stock, the bank was in an insolvent condition, and that from his business relations therewith Rogers is chargeable with notice of that insolvent condition, and that he had actual notice thereof; and that there were circumstances from which it might be inferred that he sold his shares of stock to escape further liability as a stockholder of the bank. The findings of the lower court before whom this case was tried sitting as a jury are conclusive on this court to the same extent as the verdict of a jury. The sale of the shares of stock of the bank made by Rogers was therefore not, in the opinion of the majority of the court, made in good faith, and did not therefore release him from liability as a stockholder thereof for these public funds.

But the writer hereof is of opinion that there was no testimony adduced upon the trial of this case showing that Rogers knew of the insolvency of the bank at the time that he sold the shares of stock therein, or that he had knowledge or notice that these public funds were or had been on deposit in the bank, or that he made such sale in order to escape liability as a stockholder thereof; and therefore there was no testimony legally sufficient to show that he did not sell his stock honestly and in good faith; and in my opinion the judgment against Rogers should be reversed, and he should be granted a new trial.

It follows that the judgment of the lower court must be affirmed as to all the defendants except as to J. O. Hutcheson; the judgment against J. O. Hutcheson is reversed, and the cause as to him is dismissed.

HART, J., concurs in the judgment; WOOD, J., dissents as to liability of Rogers.