## SMITH v. DONGES et al.
### No. 5031.

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1934.

Joseph H. Carr, of Camden, N. J., for appellant.

Joseph C. Haines, of Camden, N. J., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court setting aside assessments on the stock of the bankrupt corporation, the Protexometer Manufacturing Company, Inc., against the several appellees, who petitioned the court for a review of the assessments made on the stock purchased by them of the bankrupt company.

The Protexometer Company was incorporated in 1920 under the laws of Delaware with an authorized capital stock of $1,000,-000, divided into 1,000,000 shares of a par value of $1. At the instigation of the promoters, one of whom was A. J. Clapham, dummy directors, at the incorporators' meeting, authorized the issuance of $999,000 of stock in exchange for certain patent rights. It was agreed that 449,000 shares of this stock would be donated to the treasury of the company.

Clapham, trading under the name of J. F. Dower & Co., offered to sell this treasury stock at prices ranging from 15 to 75 cents per share, for a sum which would net the company approximately $200,000.

It appears that Clapham purchased stock from time to time in anticipation of sales by him or his agents to the public. This stock was issued to Clapham and paid for by him, at the rate agreed on in his contract with the company. When sales were made by Clapham, he returned, without indorsement for transfer, certificates purchased by him to the company to be canceled, and new certificates were issued in their place in the name of the purchasers. Clapham sold the stock to the appellees in this manner, and each of them paid him a sum in excess of the amount that he had paid the company for the stock. The stock selling campaign began in August of 1920 and continued for approximately a year.

A small factory was operated by the company from February to August in 1921.

Over 600,000 shares of stock was issued, and the company only received $19,345.13 for it. The special master, to whom the matter was referred below by the consent of the parties, found that all of the stock was issued improperly, that the board of directors of the company acted irregularly, and that the appellees did not know whose stock they were purchasing, but bought it for the purpose of investment.

It further appears that in October, 1921, Clapham induced a large number of the holders of the stock to exchange it for an equal number of shares in a corporation known as the Warnax Company, which Clapham had caused to be organized. Warnax stock was issued and the certificates turned over to the Protexometer stockholders in exchange for the stock which they had assigned to the Warnax Company. The Protexometer Company refused to transfer on its books the stock which the appellees assigned to the Warnax Company.

The certificates of stock of the Protexometer Company which the appellees purchased from Clapham bore the statement, "Full Paid and Non-Assessable" and the usual provisions for transfer. Apparently, Clapham sold some of the appellees a relatively small quantity of the so-called "escrow stock" which bore in small letters at one side of the certificate evidencing the stock the additional provision that the certificate was "not transferable nor negotiable until after 12/3/22."

The Protexometer Company was adjudicated a bankrupt in February, 1922. Subsequently, on the petition of the trustee, the appellant here, the referee assessed the stock of the Protexometer Company. The amount of the assessment was the sum necessary to bring the cost of each share up to .3865 cents. Those who had purchased stock for more than that sum were not required to participate. The ten appellees were assessed for various sums and contested the referee's legal power to order the assessments.

The special master who was acting for the District Court found that the stock of the Protexometer Company was issued improperly; that the appellees were not subscribers, but derived their title to the stock through Clapham; that they were induced to purchase the stock by fraudulent misrepresentations; that they were bona fide purchasers for value of the "treasury stock" and the "escrow stock," not having had notice that they were original subscribers or purchasing stock on which they might be liable for assessments; that the appellees were not the owners of the Protexometer stock at the time the company became bankrupt; and that they were not liable for the assessments.

The facts and issues here have necessarily become confused, or obscured, by reason of the circumstances and nature of the case. The important question to decide is whether or not the appellees were bona fide transferees, without notice, of stock issued as fully paid.

Whether or not the theory of the rule is based on the principle that stock is a trust fund for creditors, or on contract, or some other principle, the law is well settled that a transferee of stock from an original subscriber is not liable to the creditors of the corporation for an unpaid balance on the stock marked and issued as paid for in full if the transferee is a bona fide purchaser without notice. Cleveland Rolling-Mill Company v. Texas & St. Louis Railway Company (C. C.) 27 F. 250; Du Pont v. Tilden (C. C.) 42 F. 87; Brant v. Ehlen, 59 Md. 1; Easton National Bank v. American Brick & Tile Company, 69 N. J. Eq. 326, 60 A. 54; Clark on Corporations, p. 480; 38 Harv. L. Rev. 1112; 40 Harv. L. Rev. 779.

The learned master found, and there is substantial evidence to support his conclusion, that Clapham purchased the stock, both "treasury" and "escrow," at large discounts, and that, when he sold shares of stock to the appellees, he returned to the company the certificates, which evidenced the stock owned by him, and had the company issue new certificates for the stock in the names of the transferees, the appellees. Therefore the appellees were not subscribers to the stock of the Protexometer Company.

The appellees believed that they were making an investment in purchasing the stock. The stock for which they paid various prices was represented by certificates issued in their names and marked prominently as "Full Paid and Non-Assessable." Clapham, who sold the stock, was engaged in a stock-selling scheme, and the appellees purchased the stock relying on his plausible misrepresentations. They had no knowledge of the water in the stock.

The evidence fails to establish that they had notice of facts sufficient to put them on their guard and to require them to investigate. Accordingly the master was justified in finding that they were bona fide transferees for value. The imprint found on a few shares of the "escrow" stock to the effect that it was nontransferable for some period of time is not sufficient notice to take it out of the rule.

The master further found that the appellees had disposed of their stock prior to the bankruptcy of the Protexometer Company, and had accepted stock in the Warnax Company, but the Protexometer Company re-

fused to transfer the stock on the books. It is unnecessary for us to decide whether or not the appellees are entitled to the protection of the rule of law that a holder of stock who sells the stock and delivers the certificate therefor properly indorsed to the proper corporate official is not liable for subsequent assessments, although the corporation neglects to transfer the stock on the books. Cox v. Elmendorf, 97 Tenn. 518, 37 S. W. 387; Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266. The appellees' liability under that rule would still depend upon whether or not they were bona fide transferees originally. Graham v. Fleissner's Ex'rs, 107 N. J. Law, 278, 283, 153 A. 526.

The decree is affirmed.