# WHITNEY and Others, Executors, *v.* BUTLER, Receiver.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued October 12, 1886.—Decided November 1, 1886.

A, an owner of shares in the capital stock of a national bank, employed a broker and auctioneer to sell them by public auction. They were bid off by B, who paid the auctioneer for them, and received from him the certificate of stock, with a power of attorney for transfer duly executed in

blank. The auctioneer paid the purchase-money to A. B was employed by the president of the bank to make this purchase for a customer of the bank, who had made a deposit in the bank for the purpose, and he delivered the certificate and the power of attorney to the president, and received from the bank the money for the purchase. No formal transfer of the stock was made on the transfer-book of the bank. Shortly afterwards the bank became insolvent, and eventually went into the hands of a receiver, who made an assessment on the stockholders under the provisions of Rev. Stat. § 5205, to make up the deficiency in the capital. Until after the stoppage A had no knowledge as to the purchaser, or as to the neglect to formally transfer the stock, and no reason to suppose that the transfer had not been made. In an action against A, by the receiver, to recover the amount of the assessment upon his said stock, *Held:* That the responsibility of A ceased upon the surrender of the certificates to the bank, and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as the president knew, a transfer of the stock on the books of the bank.

This, like the case last reported, was an action at law by the receiver of the Pacific National Bank of Boston against an alleged stockholder in that bank, to recover an assessment on his stock. The facts in relation to the failure of the bank and the imposition of the assessment by the receiver are the same as those reported in the last case. The material facts upon which the defendant relied to escape liability under the assessment were contained in the "Agreed facts" set forth or referred to in the opinion of the court.

*Mr. E. R. Hoar*, for plaintiffs in error.

*Mr. A. A. Ranney*, for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiffs in error are the personal representatives of Leonard Whitney, who, at the time of his death, held two certificates for fifty shares each of the capital stock of the Pacific National Bank of Boston. That bank suspended on November 18, 1881, and from that date until March 18, 1882, was in charge of an examiner of national banks. On the day last named, with the permission of the Comptroller of the Currency, it resumed business, and so continued until May 20,

1882, when it failed, and was placed by that officer in the hands of a receiver to be wound up. At the time the receiver took possession, as well as when this action was brought, March 14, 1883, the above shares of stock stood in the name of Whitney on the books of the bank.

This suit was brought against the executors of Whitney, pursuant to the orders of the Comptroller of the Currency. It is based upon those provisions of the statute which declare that the shareholders of national banking associations shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements, to the extent or amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; and that estates and funds in the hands of executors of persons holding stock shall be liable, in like manner and to the same extent, as the testator would have been if living. Rev. Stat., §§ 5151, 5152. The assessment by the Comptroller upon shareholders to meet the bank's debts was for the full amount authorized by the statute.

The defendants insist that they were not shareholders of the bank, and did not hold, nor were entitled to hold, any certificates of shares of its capital stock, either at the date of its suspension, or when the receiver was appointed, or when the assessment was made by the Comptroller. This defence was overruled, and the executors of Whitney were adjudged to be liable, the circuit judge observing: " This being a suit brought by the receiver, who represents the creditors, and it appearing that the stock was not transferred on the books of the company, as provided by the by-laws, we think the defendants liable."

The question before the court is whether, under the statute and the facts specially found, the defendants were liable to be assessed for the contracts, debts, and engagements of the bank. The statute declares that the capital stock of a national bank shall be transferable on its books in such manner as may be prescribed in the by-laws or articles of the association—every person becoming a shareholder by such transfer succeeding, in proportion to his shares, to all the rights and liabilities of the

prior holder. Rev. Stat. § 5189. The by-laws of this bank provide that its stock should be assignable only on its books, subject to the restrictions and provisions of the statute; that a transfer-book be kept, in which all assignments and transfers of stock should be made; that each certificate should state upon its face that the stock is transferable only on the books of the bank; and that when a transfer is made the certificate shall be returned and cancelled, and a new one issued. Whether these by-laws were so far complied with as to release the defendants as executors from the liability imposed by statute depends upon the effect to be given to certain acts of the executors and of the president of the bank, in connection with the sale of the stock standing in Whitney's name.

It appears from the special finding of facts that Abner Coburn, of Maine, desiring to buy two hundred and fifty shares of the stock of this bank, made a special deposit in it of $25,000 to be applied for that purpose. This fact appears from a letter addressed to him by Benyon, the president of the bank, under date of September 21, 1881, in which the latter said: "Yours of 20th received, with check $25,000, which we will use pending the purchase of our stock, and will hold on your account, as a special deposit, securities to the same amount, till we succeed in making the purchase. This leaves the amount in your control until invested, and, I trust, will be satisfactory to you." That the stock might be obtained, Benyon secured the services of one Eager, who had a deposit account with the bank; and that the latter might have money with which to buy the stock, Benyon placed to his credit, as a temporary loan, out of the funds of the bank, the exact amount required for the purchase.

On November 8, 1881, the defendants—having no reason whatever to believe that the bank was insolvent, or was about to become so; on the contrary, believing it to be solvent, and having no information as to Coburn's order—placed the certificates held by them in the hands of Day & Co., brokers, with directions to sell the stock. They also placed in their hands a power of attorney in the form usually adopted for transfers of stock. It was blank as to the names of the attorney and the

purchaser, but was signed by the executors and duly witnessed. It was in these words: "Know all men by these presents, that, for value received, we, the executors of the estate of Leonard Whitney, of Watertown, do hereby make, constitute, and appoint, irrevocably, ———, true and lawful attorney (with power of substitution), for and in our name and our behalf to sell, assign, and transfer unto ——— one hundred shares, now standing in the name of L. Whitney, of Watertown, Mass., in the capital stock of the Pacific National Bank; and said attorney is hereby fully empowered to make and pass all necessary acts for the said assignment and transfer. Witness our hands and seals." To that power of attorney was appended the following: "For value received, I appoint, irrevocably, ——— as my substitute, with all the powers above given to me. Witness ——— hand and seal, ———, 187-. ——— ———. [Seal.]" The other papers were the two certificates of stock and the certificate from the proper Probate Court, showing the appointment and qualification of the defendants as executors. Each stock certificate contained the following words: "Transferable only on the books of the said bank, in person or by attorney, on surrender of this certificate."

On November 12, 1881, Day & Co. offered the stock for sale at public auction, and the same was, at Benyon's request, bought by Eager at the sum of $10,400. Three days thereafter, November 15, 1881, Eager offered to the brokers in payment for the stock his check on the Pacific National Bank. The bank at which the brokers did business declined to take that check in its deposit account. Benyon being informed of that fact, substituted for the check of Eager a cashier's check on another bank, which last check being paid, Day & Co., with the knowledge of Eager, delivered to Benyon, the president of the bank, the foregoing certificates of stock, with the power of attorney, the certificate from the Probate Court, and other papers—he thereafter holding the same "as purporting to be security for, and as representing said loan, awaiting the filling of Coburn's order, with the design then to have the stock transferred to him as soon as his order had been filled." On the 16th of November the defendants received from the

brokers the proceeds of the sale of the Whitney stock. Benyon obtained only fifty additional shares, for the purpose of filling the order of Coburn. All this happened before the bank suspended on November 18, 1881.

The executors of Whitney did not know by whom the stock was bought at the auction sale, unless the knowledge of the brokers is to be imputed to them. Believing, in good faith, and having no reason to doubt, that the purchaser had caused the transfer to be made, neither they nor the brokers took steps to ascertain whether it had, in fact, been done.

They had no knowledge or information until after the appointment of the receiver as to the purpose for which either Benyon or Eager held the before-mentioned papers or the stock.

While the bank did not purchase nor intend to purchase the stock for itself, its president, in execution of Coburn's order, procured Eager to buy this stock with funds furnished him for that purpose. Coburn did not take it; and the receiver, after he took possession, found the before-mentioned papers in an envelope, purporting to represent a security for a demand loan to Benyon.

We do not think that the question arising upon these facts is concluded by any of the cases cited in the opinion of the circuit judge,* or in those cited in the brief for the receiver.† In nearly all of them, where the issue was between the receiver, representing the creditors, and the person standing on the register of the bank as a shareholder, it is said, generally, that the creditors of a national bank are entitled to know who, as shareholders, have pledged their individual liability as security for its debts, engagements, and contracts; that if a person *permits* his name to appear *and remain* in its outstanding certificates of stock, and on its register, as a shareholder, he is

---

* *Note by the Court.*—*Davis* v. *Society of Essex*, 44 Conn. 582; *Adderly* v. *Storm*, 6 Hill, 624; *Anderson* v. *Philadelphia Warehouse Co.*, 111 U. S. 479, 483; *Johnston* v. *Laflin*, 103 U. S. 800, 804; *Turnbull* v. *Payson*, 95 U. S. 418; *Brown* v. *Adams*, 5 Bissell, 181.

† *Note by the Court.*—*Davis* v. *Stevens*, 17 Blatch. 259; *Irons* v. *Manf. Nat. Bk.*, 27 Fed. Rep. 591; *Bowdell* v. *Nat. Bk.*, Brown Nat. Bk. Cas. 146.

estopped, as between himself and the creditors of the bank, to deny that he is a shareholder; and that his individual liability continues until there is a transfer of the stock on the books of the bank, even where he has in good faith previously sold it and delivered to the buyer the certificate of stock, with a power of attorney in such form as to enable the transfer to be made. Some of the cases hold that the seller is liable as a shareholder even where the buyer agreed to have the transfer made on the books of the bank, but fraudulently or negligently failed to do so. But it will be found, upon careful examination, that in no one of the cases in which these general principles have been announced, as between creditors and shareholders, does it appear that the precaution was taken, after the sale of the stock, to surrender the certificates therefor to the bank itself, accompanied (where such surrender was not by the shareholder in person) by a power of attorney, which would enable its officers to make the transfer on the register. The position of the seller, in such case, is analogous to that of a grantor of a deed deposited in the proper office to be recorded. The general rule is, that the deed is considered as recorded from the time of such deposit. 2 Washburn on Real Prop., B. 3, ch. 4, par. 52. Where the seller delivers the stock certificate and power of attorney to the buyer, relying upon the promise of the latter to have the necessary transfer made, or where the certificate and power of attorney are delivered to the bank without communicating to its officers the name of the buyer, the seller may well be held liable as a shareholder until, at least, he shall have done all that he reasonably can do to effect a transfer on the stock register.

In the case before us the personal presence of the defendants at the bank was not required in order to secure their release from liability as shareholders. Besides, the certificates of stock authorized them to act by attorney. Through their agents, the brokers, who sold the stock, and through whom they received the money paid for it, they surrendered the certificates and power of attorney to the president of the bank, he receiving them, with knowledge not only that defendants had parted with all title to the stock and had been paid for it, but, also,

that it had been purchased at public auction by Eager. He knew equally well that the surrender of the certificates and the delivery of the power of attorney and the certificate from the Probate Court could only have been for the purpose of having it appear, by means of a transfer on the books of the bank, that Whitney's executors were no longer shareholders. The right to have the transfer made, and thereby secure exemption from further responsibility, was secured to the defendants both by the statute and by the by-laws of the bank. They did all that was required by either as preliminary to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary formal entries on its books. If, when the agents of defendants delivered the certificates and power of attorney to the president of the bank, the latter had given any intimation of a purpose not to make the transfer promptly, or had avowed an intention to postpone action until a sufficient amount of stock was obtained to fill Coburn's order, it may be that the failure of the defendants to take legal steps to compel a transfer would, in favor of the creditors of the bank, have been deemed a waiver of the right to an immediate transfer on the stock register. But no such intimation was given; no such avowal was made. No objection was made to the power of attorney, or to the discharge of the defendants from liability. So far as the record shows, nothing was said or done by the bank's officers to raise a doubt in the minds of the defendants' agents that the transfer would be made at once.

It was suggested in argument that the defendants should have seen that the transfer was made. But we were not told precisely what ought to have been done to this end that was not done by them and their agents. Had anything occurred that would have justified the defendants in believing, or even in suspecting, that the transfer had not been promptly made on the books of the bank, they would, perhaps, have been wanting in due diligence had they not, by inspection of the bank's stock register, ascertained whether the proper transfer had in fact been made. But there was nothing to justify such a belief or to excite such a suspicion. Their conduct was

under all the circumstances, that of careful, prudent, business men, and it would be a harsh interpretation of their acts to hold (in the language in some of the cases, when considering the general question under a different state of facts) that they allowed or permitted the name of Whitney to remain on the stock register as a shareholder. We are of opinion that, within a reasonable construction of the statute, and for all the objects intended to be accomplished by the provision imposing liability upon shareholders for the debts of national banks, the responsibility of the defendants must be held to have ceased upon the surrender of the certificates to the bank and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock, on the books of the association, to the purchaser.

For the reasons stated, the judgment is

*Reversed, and the cause remanded, with directions to enter a judgment for the defendants.*