## LOGAN v. CRISSINGER, Comptroller of Currency, et al.

(District Court, D. Oregon. July 2, 1923.)

No. E—8593.

1. **Injunction ⚖➡26(6)—Defense at law to defeat assessment of bank stock held adequate.**

The test whether plaintiff, seeking an injunction against a suit to enforce an assessment on bank stock, has an adequate remedy at law, is whether he could have interposed as his defense at law a matter on which he relies as constituting his equitable action, and he clearly could interpose a claim that he had sold the stock to another, who failed to have it transferred on the books.

2. **Banks and banking ⚖➡250(5)—Name on books as stockholder creates presumption of fact.**

The presence of the name of the stockholder on the stock register of a national bank creates a presumption of legal liability on his part, which, however, may be rebutted by proof of a bona fide sale of the stock and a satisfactory showing that the seller has done all that he can reasonably be called upon to do in the furtherance of every duty which the law imposes on him to secure a transfer on the registry of the bank.

3. **Banks and banking ⚖➡249(3)—Owner of stock according to books held liable.**

Where plaintiff had acquired stock in a national bank with intention of reselling it to friends and thereby eliminating the former owner's control of the bank, and had had the stock transferred to his name on the books of the bank, as was necessary to enable him to carry out his purpose, he is liable for assessments on the stock after the bank became insolvent, notwithstanding an agreement that the stock should be returned to the former owner, if not paid for.

In Equity. Suit by J. T. Logan against D. R. Crissinger, Comptroller of the Currency, and another. Complaint dismissed, and judgment rendered for defendants under the counterclaim.

Geo. W. Hayes, of Vale, Or., and J. W. McCulloch, of Ontario, Or., for plaintiff.

C. M. Crandall, of Vale, Or., for defendants.

WOLVERTON, District Judge. On March 29, 1922, plaintiff filed his bill of complaint against defendants named, to enjoin defendant Moe, as receiver, from enforcing personal 'liability on capital stock, which it is alleged he held, of the First National Bank of Vale, Or. The stock concerned consists of certificates Nos. 156 and 157, of 50 shares each, and 158, of 29 shares, which, at the time of failure of the bank and appointment of the receiver, were standing on the books of the bank in the name of plaintiff. It is alleged, in effect, that plaintiff was not at the time the owner of the stock, but that one Wildhaber was; that plaintiff held the stock under contract of purchase, and that, although the certificates of stock were duly delivered to Wildhaber, with transfer and power of attorney indorsed thereon, he failed and neglected to have such transfer made on the books of the bank.

To this complaint, the receiver made answer. Subsequently, however, on September 20, 1922, he filed a motion to dismiss, on grounds

of insufficiency of the complaint, that plaintiff has an adequate remedy at law, and that the court is without jurisdiction. The motion coming on to be heard, the court made and entered an order setting the cause for hearing, with leave to the receiver to file such other pleadings as he might elect, and leave to plaintiff to make such answer as he might see fit, to which the receiver would be entitled to reply, if desired.

On October 28, 1922, the receiver filed an amended answer, and by the same pleading a cross-bill and counterclaim. The answer sets up, among other things, that the receiver was about to bring an action against the plaintiff to recover on the assessment of stock, stating the grounds upon which the action would have been based. The cross-bill and counterclaim set forth more fully the acts and transactions of the Comptroller and the receiver with reference to the assessment of the stock, and a rather more complete history of the holding of the stock in question by Logan, and the manner in which it was carried on the stock books of the bank in his name, and it is alleged that such stock so continued to be thus carried until the time the bank closed its doors, and was taken over by the Comptroller.

There appears to have been no answer or reply filed by the plaintiff to this pleading. Nevertheless the parties went to trial before the court, with a written waiver by counsel of trial by jury duly filed. Such is the state of the pleadings and proceedings under which the trial proceeded.

Briefly, the testimony shows that, prior to January 14, 1920, G. F. Wildhaber was interested in the two banks then in operation in Vale, Or., namely, the United States National and the First National. The plaintiff was a director and vice president of the First National Bank. Wildhaber was the owner of 129 shares of its capital stock. On January 14, 1920, Wildhaber transferred his stock to plaintiff. Thereupon the stock certificates were surrendered to the bank, and, in lieu thereof, three certificates of stock, Nos. 156, 157, and 158, were issued to Logan; the first two being for 50 shares each, and the last for 29 shares. Logan receipted to the bank for this stock. In the same transaction, Logan gave Wildhaber his note for $19,350, and it is said that a contract was entered into between them concerning the stock, which is called by Logan and by Albert W. Reed, who said he drew it up, an option. The contract was destroyed, and, from the testimony, it is difficult to say just what the nature of it was. It does appear that, if within six months Logan was unable to dispose of the stock, the contract was to be canceled, and the note and stock returned. It further appears that, as a part of the same transaction, Logan signed a blank transfer, with the usual power of attorney, on the back of each certificate, and that the stock was left with Reed, the cashier of the bank, to be delivered to Wildhaber, and was put in an envelope where other papers belonging to Wildhaber were kept. Wildhaber subsequently took the stock from the bank, and pledged it, together with Logan's note, with the American National Bank, at Pendleton, Or., to secure a loan to him of $3,000. The note was subsequently secured from the bank by Wildhaber, and returned to Logan, with his duplicate of the contract. This was along in the fall of 1920. It was at

that time that both the contract and the note were destroyed. The stock, however, remained pledged with the Pendleton bank.

Logan relates that, in securing the Wildhaber stock, his object was to get Wildhaber out of control of the bank in which he (Logan) was interested; that he had no means at that time with which to purchase the stock, but that he thought he would be able to sell it in small blocks to his neighbors; so, he says, "I practically bought the stock * * * with an option." The exact nature of the option does not appear, however. At a meeting of the stockholders on January 11, 1921, Logan voted the whole of this stock, with other 10 shares, as the owner and holder thereof. Why he did it is immaterial. The fact is that he thus exercised ownership. The stock was listed in his name in a statement given to the county assessor by Reed, cashier, for assessment purposes. Logan also verified numerous bimonthly reports of the bank to the Comptroller, running as late as June 30, 1921, in which it appears that he is the owner of 139 shares of its stock.

The questions presented are: First, whether the bill of complaint states a cause in equity, inasmuch as it is a matter of controversy whether plaintiff has a plain, speedy, and adequate remedy at law; and, second, whether the defendant receiver is entitled to recover, under the testimony.

[1] A fair test as to whether plaintiff has an adequate remedy at law is to ask whether, assuming that he had first been sued to recover on the assessment, he could have interposed as his defense at law the matter upon which he relies as constituting his equitable action. I think it quite clear that he would be entitled so to do, and thus it is obvious that he is without remedy in equity.

[2] As to the second question, it would seem that, under the evidence, plaintiff is liable upon the stock assessment. There is a presumption of legal liability begotten by the presence of the name of the stockholder on the stock register of the bank. This presumption may be rebutted, however, by the fact of a bona fide sale of the stock, where it is made satisfactorily to appear that the vendor has performed every duty which the law imposes upon him to secure a transfer on the registry of the bank. Earle v. Carson, 188 U. S. 42, 44, 23 Sup. Ct. 254, 47 L. Ed. 373. Speaking to the subject generally, the court, in Whitney v. Butler, 118 U. S. 655, 660, 7 Sup. Ct. 61, 30 L. Ed. 266, says:

"That the creditors of a national bank are entitled to know who, as shareholders, have pledged their individual liability as security for its debts, engagements, and contracts; that if a person permits his name to appear and remain in its outstanding certificates of stock, and on its register, as a shareholder, he is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder; and that his individual liability continues until there is a transfer of the stock on the books of the bank, even where he has in good faith previously sold it, and delivered to the buyer the certificate of stock, with a power of attorney in such form as to enable the transfer to be made."

Again, it was held, in McDonald v. Dewey, 134 Fed. 528, 67 C. C. A. 408:

"A stockholder in a national bank remains liable to creditors so long as the stock stands in his name on the books, although he may have sold it and delivered the certificate to the purchaser, unless he has done all that he can

reasonably do to have the same transferred, by seeing that the certificate is delivered to the bank, with the proper power of attorney and data to enable the officers to make the transfer."

[3] It is inferable from the testimony that Logan did not intend that Wildhaber should at once apply to the bank for a transfer of the stock to be made to him on the stock books. Logan was entitled, under the supposed contract, to six months in which to dispose of the stock to his neighbors. But, after the expiration of the six months, Wildhaber had the stock in pledge at the Pendleton bank, and was not in a position to secure such transfer to be made. At any rate, it is unmistakable that Logan did not do all he could to have the transfer made on the books to Wildhaber. The real purpose of the transfer of the certificates of stock to Wildhaber was, no doubt, to secure the payment of Logan's note of $19,350, given for the purchase by him, and it was designed that the stock books should show that Logan was the owner, so that he could sell the stock to other parties. The stock books continued to show such ownership until the bank closed. On the face of the record and as a legal proposition, Logan is estopped to deny his liability on the assessment.

There will be a general finding for the receiver, and judgment will be rendered dismissing the complaint, and in favor of the receiver and against plaintiff, under the counterclaim, for the amount prayed for therein.