984

## MEREDITH v. RAWLINGS et al.
### No. 186.

District Court, S. D. Alabama, S. D.
Aug. 20, 1934.

Smith & Johnston and Alex Birch, all of Mobile, Ala., for plaintiff.

Gordon, Edington & Leigh, of Mobile, Ala., for receiver.

Gessner T. McCorvey, of Mobile, Ala., for Merchants' Nat. Bank.

ERVIN, District Judge.

This is a bill filed by plaintiff, Meredith, April 28, 1934, against the defendants named in the heading.

It sets up that on June 22, 1931, the Mobile National Bank failed and conveyed its assets to the Merchants' National Bank, who assumed the payment of all the liabilities of the Mobile National Bank, other than those due its stockholders, the Merchants' National Bank agreeing to liquidate the affairs of the Mobile National Bank.

The Merchants' National Bank reserved the right to have the Comptroller of the Currency appoint a receiver and enforce the liabilities of shareholders of the Mobile National Bank on account of the statutory liability as shareholders, in the event the assets of the bank did not realize enough to pay the debts of the Mobile Bank.

That at the instance of the Merchants' National Bank, A. F. Rawlings was appointed as receiver, and on April 11, 1934, an as-

sessment of $10 a share, being the par value of each of the shares, was levied, and that plaintiff was notified of such assessment on one hundred and thirty-three shares of stock standing in his name on the books of the Mobile National Bank.

That on the 9th day of July, 1930, plaintiff sold to William B. Taylor, who was then president of the Mobile National Bank, certain lands in Baldwin county, Ala., for $2,-500, $500 of which was paid in cash and $2,-000 was to be paid at the rate of $500 a year, as evidenced by said Taylor's notes of even date, and a vendor's lien be reserved to secure the deferred payment.

On May 21, 1931, Taylor represented to plaintiff that it would be inconvenient for him to make the first deferred payment and suggested that he was willing to transfer shares of the Mobile National Bank in payment of the balance due on said land.

On the 22d day of May, 1931, he had a conference with Taylor in which Taylor, who was then president of said bank, then stated to plaintiff that the bank had paid its dividends regularly and was in good financial condition, and the stock was easily worth $20 a share, and that its book value was $15.85 a share, on a conservative estimate.

That plaintiff, relying upon the representations made by Taylor, accepted one hundred and thirty-three shares of such stock in full settlement of the indebtedness due him by Taylor.

That at the time said representations were made, they were untrue, and the bank was then in failing circumstances. These facts were known to Taylor but were not known to plaintiff, and that said misrepresentations were made by Taylor to induce plaintiff to accept said shares of stock in settlement of his indebtedness, and were relied on and acted upon by the plaintiff, who immediately canceled his vendor's lien upon the records.

That in such trade, Taylor reserved the right to the next quarterly dividend upon such shares of stock which was to become due July 1, 1931.

That on the 20th day of June, 1931, the said bank closed its doors and ceased to do business.

He further avers that he did not discover the falsity of said misrepresentations until after the failure of the bank, and that on the 23d day of June, 1931, he saw the defendant Taylor and notified him that on account of said misrepresentations made by said Taylor, he desired to rescind the agreement, which was agreed to by said Taylor. On the 24th

day of June, 1931, the said Taylor retransferred to plaintiff all the land originally sold to Taylor by plaintiff, and plaintiff repaid to Taylor the $500 initial payment and redelivered to him the notes which had been given plaintiff by said Taylor, and then plaintiff retransferred and delivered the certificate of one hundred thirty-three shares of stock in said bank to said William B. Taylor.

Immediately after the rescission agreement and redelivery of the certificate for said shares of stock, plaintiff and said Taylor called upon Ernest F. Ladd, as president of the Merchants' National Bank of Mobile, and requested that the fact of the rescission and the transfer of the stock be changed upon the records of the Mobile National Bank which were then in the possession of the said Merchants' National Bank, but said Ernest F. Ladd refused to comply with such request.

After the prayer for process, plaintiff prays that his name as owner of stock of the Mobile National Bank be canceled and that the name of William B. Taylor be inserted in lieu thereof, and that the assessment against plaintiff be canceled, and that said Rawlings, as receiver, be permanently enjoined from instituting any action at law against the plaintiff to recover against him on account of the plaintiff's alleged ownership of such shares in the Mobile National Bank.

The receiver, Rawlings, and the Merchants' National Bank each moved to dismiss the bill for want of equity.

The question of the liability of the plaintiff depends on the construction of section 64, title 12, USCA, which reads as follows: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

It is contended that this section fastens the liability upon all shareholders of the bank whose names appeared as such on the records at the time of its failure. Anderson v. Cronkleton (C. C. A.) in 32 F.(2d) 170, is cited in support of this contention.

The case does apparently support the citation. However, on page 171 of 32 F.(2d) it says: "One whose name *rightfully* appears on the books of a national bank as a stockholder is under this statute subject to certain liabilities, regardless of how he may have acquired the stock." (Italicizing mine.)

So, of course, in that case the court was acting on the assumption that the name of the shareholder rightfully appeared on the books of the bank as such.

In the case of Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266, the court held that where a shareholder sold his shares and gave to the transferee an assignment of the shares and a power of attorney to enter the assignment on the books of the bank, and such transfer was presented to the president of the bank with the power of attorney, but the president delayed entering the assignment upon the books, that the person who so transferred his shares had done all he was required to do and was not thereafter liable under this statute. The court, on page 662 of 118 U. S., 7 S. Ct. 61, 64, says: "The right to have the transfer made, and thereby secure exemption from further responsibility, was secured to the defendants both by the statute and by the by-laws of the bank. They did all that was required by either as preliminary to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary formal entries on its books. If, when the agents of defendants delivered the certificates and power of attorney to the president of the bank, the latter had given any intimation of a purpose not to make the transfer promptly, or had avowed an intention to postpone action until a sufficient amount of stock was obtained to fill Coburn's order, it may be that the failure of the defendants to take legal steps to compel a transfer would, in favor of the creditors of the bank, have been deemed a waiver of the right to an immediate transfer on the stock register."

This ruling is in accord with the Anderson Case as I read it, namely, whether the name of the individual was rightly on the books as a stockholder, and the emphasis is on whether or not such name was *rightfully* there and not on the question whether it was there regardless of how it came there.

If Meredith was overreached by Taylor as he charges, he has the *right* to rescind the

trade. He then had the *right* to have his name erased from the books of the bank as a shareholder and Taylor's replaced there. Hence, his name was not rightfully on the books of the bank as a shareholder.

It is next contended that because plaintiff's name appeared on the books of the bank as a stockholder at the time of the assignment, he was estopped to deny that fact.

In the Whitney Case, the same contention was made, and the court, beginning on page 660 of 118 U. S., 7 S. Ct. 61, 63, says: "We do not think that the question arising upon these facts is concluded by any of the cases cited in the opinion of the circuit judge, or in those cited in the brief for the receiver. In nearly all of them, where the issue was between the receiver, representing the creditors, and the person standing on the register of the bank as a shareholder, it is said, generally, that the creditors of a national bank are entitled to know who, as shareholders, have pledged their individual liability as security for its debts, engagements, and contracts; that if a person permits his name to appear and remain in its outstanding certificates of stock, and on its register, as a shareholder, he is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder; and that his individual liability continues until there is a transfer of the stock on the books of the bank, even where he has in good faith previously sold it, and delivered to the buyer the certificate of stock, with a power of attorney in such form as to enable the transfer to be made. Some of the cases hold that the seller is liable as a shareholder even where the buyer agreed to have the transfer made on the books of the bank, but fraudulently or negligently failed to do so. But it will be found, upon careful examination, that in no one of the cases in which these general principles have been announced, as between creditors and shareholders, does it appear that the precaution was taken, after the sale of the stock, to surrender the certificates therefor to the bank itself, accompanied (where such surrender was not by the shareholder in person) by a power of attorney which would enable its officers to make the transfer on the register. The position of the seller, in such case, is analogous to that of a grantor of a deed deposited in the proper office to be recorded. The general rule is that the deed is considered as recorded from the time of such deposit. 2 Washb. Real Prop. book 3, c. 4, par. 52. Where the seller delivers the stock certificate and power of attorney to the buyer, relying upon the promise of the latter to have the necessary transfer made, or where the certificate and power of attorney are delivered to the bank without communicating to its officers the name of the buyer, the seller may well be held liable as a shareholder until, at least, he shall have done all that he reasonably can do to effect a transfer on the stock register."

This seems to dispose of the proposition that the mere appearance of one's name on the books of a bank as a shareholder estops him, but in addition to that a moment's thought would show that no estoppel can arise under that state of facts. In the first place, the statute says nothing about estoppel. It does not purpose on its face to create an estoppel. If a liability is created by the statute, it is done by the language of the statute and not by any estoppel, and no estoppel would be needed to aid such language. The statute itself is a quasi criminal one, because its effect is to create a penalty on the holders of the stock in a national bank equal to the face value of the stock when the bank fails.

Of course, if a man whose name appears on the books as a shareholder does acts as such, or permits his name to remain there long enough to authorize the inference that the creditors of the bank relied on his ownership of stock as an asset, there would be an estoppel. No estoppel in pais can arise except where the man sought to be estopped has done something or refrained from doing something which he was required to do or not to do, and which might have caused injury to another or caused such other to change his position for the worse. It is true that many of the cases in discussing the liability used loose expressions as to estoppel which might a little further than it ought, but is not authave been good on the facts of the case before them, but were so loose in their methods of expression as to be misleading.

Anderson Case as binding on the propositions

For these reasons, I do not consider the asserted, and when properly read, it may go thority on the question before me; for the question I am called upon to determine is whether or not, under the facts of this case, the name of Meredith rightfully appeared on the books of the bank as a shareholder.

Under the allegations of the bill, if Meredith had known the facts which he charges that Taylor knew, his name would never have appeared as a shareholder on the books of the bank, and such appearance was brought about by the intentional fraud of Taylor.

As soon as Meredith learned of the facts, he disaffirmed the trade by which the stock was transferred to him, he claimed a rescis-

sion, and Taylor acceded to this rescission by Meredith and reconveyed the land and accepted a reconveyance of the stock. Of course, if the original transfer by Taylor had been void, it would have been void ab initio. The transaction was not void, but was voidable at the option of Meredith on discovery of the facts. Meredith, on discovery of the facts, did avoid it.

The transfer of shares by Taylor to Meredith was then avoided from the moment of the transfer by Taylor to Meredith. The shares stood in Meredith's name only about twenty-eight days, so I see nothing in the way of estoppel on Meredith.

He did not permit his name to remain on the books as a shareholder so that the creditors could not have given any credit upon the faith of his being a shareholder. He did nothing as a shareholder. He received no dividends as a shareholder. Hence, I see nothing in the way of estoppel to prevent Meredith from prosecuting this bill.

In all the cases involving this question decided by the Supreme Court, namely: Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266, Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822, and Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218, these opinions were all written by Justice Harlan and all of them were actions at law.

In the Lantry Case the court for the first time calls special attention to the fact on page 548 of 182 U. S., 21 S. Ct. 878, 882, that: "The present action is beyond question one at law. * * * If the defendant was entitled, under the facts stated, to a rescission of his contract of purchase, and to a cancelation of his stock certificate, and consequently to be relieved from all responsibility as a shareholder of the bank, he could obtain such a relief only by a suit in equity to which the bank and the receiver were parties."

On page 549 of 182 U. S., 21 S. Ct. 878, 883, the court says: "So that the only way in which the defendant could have effectively raised the question of his liability as a shareholder, arising from frauds committed by the bank or its officers before its suspension whereby he was induced to become a shareholder, was by a suit in equity against the bank and the receiver. Instead of pursuing that course, he sought, by interposing an equitable defense, to defeat this action at law brought by the receiver under the statute. That cannot be done, because under the Constitution of the United States the distinction between law and equity is recognized, so that in actions at law in a circuit court of the United States equitable defenses are not permitted."

Again, on page 550 of 182 U. S., 21 S. Ct. 878, 883: "We must not be understood as expressing any opinion upon the question whether the defendant could have been discharged from liability as a shareholder if the facts stated in his answer by way of defense had been established in a separate suit in equity. Whether a decree based upon the facts set forth in the answer, even if established in a suit in equity, brought against the bank and the receiver after the appointment of a receiver, would be consistent with sound principle or with the statute regulating the affairs of national banks and securing the rights of creditors, is a question upon which we do not now express an opinion. We mean at this time only to adjudge that the facts set forth in the answer present grounds of relief which cannot be made available by way of defense in this action at law, and if sufficient to protect the defendant against the liability attaching to him as a shareholder, must be alleged and proved in a suit in equity to which the bank and the receiver are made parties."

I have been unable to find any case decided by the Supreme Court in which the question there reserved has been discussed. I feel therefore at liberty to consider and pass upon the question reserved by the court in the Lantry Case, for, certainly, what was there said was intentionally said so that the bench and the bar would not feel in such a suit that they were precluded from raising the question, by what had been said in previous opinions of the court rendered in actions at law.

If I have not correctly interpreted the Anderson Case, and many others in the lower courts, I do not feel bound by them further than the reasoning of such cases satisfies me as being correct.

A decree will be entered overruling the motion to dismiss.