## SCHECHTER v. SHERWIN.
### No. 5432.

Circuit Court of Appeals, Seventh Circuit.
Jan. 20, 1936.

Rehearing Denied March 9, 1936.

J. Roy Browning, of Chicago, Ill. (Harold E. Baily, of Chicago, Ill., of counsel), for appellant.

Charles S. Deneen and Roy Massena, both of Chicago, Ill. (Donald N. Schaffer, of Chicago, Ill., of counsel), for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and STONE, District Judge.

STONE, District Judge.

In this action, the receiver of the Washington Park National Bank of Chicago, hereinafter designated as "the Bank," sought to recover from Lionel A. Sherwin, appellee, the superadded liability assessed against him, as a stockholder of the Bank, by the Comptroller of the Currency, pursuant to sections 63 and 64, title 12, United States Code Annotated. Jury was waived, and the cause was tried by the court, which rendered judgment for appellee.

Appellee had purchased through F. M. Zeiler & Co., brokers, 25 shares of the cap-

ital stock of the Bank; 15 shares were purchased on November 14, 1929, and 10 shares on February 20, 1930.

At a special meeting of the stockholders of the Bank, held on November 18, 1930, pursuant to resolutions duly adopted, the capital stock of the Bank was reduced from $800,000 to $400,000, and then raised from $400,000 to $600,000. The resolution authorized the issuance of 2,000 shares of stock to four named men or their nominees, for the sum of $400,000; such sale being conditioned upon the purchasers' affording an opportunity to stockholders for a period of 150 days to purchase from such purchasers one-half share of said additional stock for each share held by each stockholder prior to the increase in the capital stock, at a price of $200 per share.

On December 2, 1930, Sherwin called at the Bank and told the president that he had rescinded the purchase of the 25 shares of capital stock, and tendered the two certificates of stock to the Bank, which were refused. On the same day, he returned his two certificates to the Bank by mail, accompanied by a letter stating that he had learned that false representations had been made to him by the officers of the Bank, when he purchased the stock, and demanded that the money he had paid for the stock be returned. The Bank refused to pay him for the stock, but retained the certificates.

The District Court found that no fraudulent representations as to the condition of the Bank were made to Sherwin at any time before or after he purchased his shares of stock.

On December 20, 1930, the president of the Bank wrote Sherwin requesting that he surrender his old certificates of stock in exchange for new; that to receive further dividends the matter should be given prompt attention. He replied that he had returned two stock certificates some time prior, and that he would not accept the new stock or dividends. No new certificates of stock were ever issued to him, nor were any new entries made on the books of the bank to show the effect of the reduction of the capital stock on November 18, 1930, on his holdings.

On June 9, 1931, the Bank was found by the Comptroller of the Currency to be insolvent, and a receiver was appointed. The stock ledger and the stock certificate book of the Bank then showed that there were on that date 25 shares of stock standing in the name of Sherwin, but no entries to show a reduction in his stock holdings.

On January 1, 1931, and on April 1, 1931, dividend checks were issued to Sherwin, the dividend being in an amount representing a dividend on 12½ shares of stock, but the checks remained at the bank and were not cashed by Sherwin.

On July 28, 1931, an assessment of $600,000 was levied upon the shareholders, and demand made upon each shareholder, including appellee, for payment in a sum equal to the par value of the stock he owned.

On August 3, 1931, Sherwin wrote the Comptroller a letter, that he was a stockholder of the bank, and that he did not know why he did not receive his new stock certificate after the reduction of the capital stock. He also asked information as to the proposed reorganization of the Bank.

On August 15, 1931, he again wrote the Comptroller stating that, if he had by his first letter led the Comptroller to believe that he was a stockholder of the Bank, he wanted to correct such impression, because he was not a stockholder of the Bank, but had rescinded his ownership of the stock and demanded a return of his money because of fraudulent representations made to him at the time he purchased the stock.

The controlling question on this appeal is, Was Sherwin, the appellee, a stockholder of the Bank on the date it suspended business? If he were, obviously he is liable for the assessment levied against him by the Comptroller of the Currency. The trial court found that he was not, and rendered judgment dismissing the declaration.

On June 9, 1931, when the Bank was found to be insolvent and closed by the Comptroller, its books of record contained entries showing that there were then 25 shares of the capital stock of the Bank registered in and carried on the books of the Bank in Sherwin's name, and that the certificates for the stock had been delivered to him at or about the date of the purchase.

Sherwin's letter of August 3, 1931, written to the Comptroller advising that he was the owner of stock in the Bank and requesting information relating to its reorganization, together with the records of the Bank, clearly established his ownership of the stock on the date the bank was closed by the Comptroller of the Currency.

One who permits his name to appear and remain on the books of a national banking association as one of its stockholders is estopped as against the receiver or creditors of the Bank to deny that he is a stockholder. In Whitney v. Butler, 118 U.S. 655, 7 S.Ct. 61, 63, 30 L.Ed. 266, the court said: "The creditors of a national bank are entitled to know who, as shareholders, have pledged their individual liability as security for its debts, engagements, and contracts; that if a person permits his name to appear and remain in its outstanding certificates of stock, and on its register, as a shareholder, he is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder; and that his individual liability continues until there is a transfer of the stock on the books of the bank, even where he has in good faith previously sold it, and delivered to the buyer the certificate of stock, with a power of attorney in such form as to enable the transfer to be made."

The Bank continued to treat Sherwin as one of its stockholders after he attempted to rescind his purchase of the stock. Two of its dividend checks were thereafter issued in his name.

The absence of all dispute in the evidence upon which rescission of contract or legal surrender of stock depends makes this issue one of law rather than of fact, and in disposing of the appeal we have acted upon this assumption.

■ The Bank president could not lawfully acquiesce in the attempted rescission. A surrender of the stock by appellee and an acceptance of it by the Bank would have constituted an unauthorized reduction in the capital stock of the banking association. The capital stock of a national banking association may be reduced pursuant to section 59, title 12, U.S.C.A., and not otherwise. This section provides that, by a vote of shareholders owning two-thirds of its capital stock, the capital stock may be reduced, with the approval of the Comptroller of the Currency and of the Federal Reserve Board. The appellee could not, by returning the stock to the Bank, escape liability to the creditors of the Bank. Section 64, title 12, U.S.C.A., provides in part as follows: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

A stockholder of a national banking association cannot reduce the capital stock of the bank by withdrawing from it his contribution thereto and escape his statutory liability. The rights of creditors of a bank cannot be thus defeated. The statute providing the superadded liability was a part of appellee's contract for the purchase of the stock. Broderick v. Rosner, 294 U.S. 629, at page 643, 55 S.Ct. 589, 79 L.Ed. 1100. If stockholders of a national bank were permitted to return their stock certificates to the bank and thereby rescind their ownership of the stock, they could in that manner entirely defeat the rights of depositors and other creditors to an assessment equal to the par value of the stock held by the stockholders, which is insured by section 64, title 12, U.S.C.A.

■ Appellee contends that he should be released from his liability as a stockholder of the Bank because he was not permitted to purchase at par his proportionate share of the increased capital stock of the Bank. The appellee at no time demanded the right to buy his proportionate part of the increased capital stock at par, but instead returned his certificates to the Bank in his attempted rescission of the stock purchase. He found no fault with the recapitalization of the Bank until after the commencement of this action. The only claim he made to a right to rescind was the alleged fraudulent representations made to him by the officers of the Bank at the time the stock was purchased. However, the trial court found that there were no such representations made to him, and the record amply sustains that finding. Appellee cannot now attack the legality of the resolution increasing the capital stock of the bank.

■ The Comptroller's certificate certifying to the increase in the capital as required by section 58, title 12, U.S.C.A., cannot be collaterally attacked. The conclusiveness of the Comptroller's certificate is not now open to dispute. Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168; Benedict v. Anderson (C.C.A.) 70 F.(2d) 227.

■ Sherwin became a stockholder of the Bank before the changes were made in its capitalization, and he remained such up to the time this action was commenced. When the capital stock was reduced from $800,000 to $400,000, his stockholdings were accordingly reduced to 12½ shares.

The fact that he refused to receive the new stock certificate when offered did not in the least alter his status as a· stockholder. Stock certificates are but evidence of title to the stock. One becomes a stockholder of a national bank association by subscribing for or purchasing its stock, paying the purchase price, and having his name entered on the corporation records as a stockholder. He may take out a certificate or not as he sees fit. In Scott v. Deweese, 181 U.S. 202, 21 S.Ct. 585, 590, 45 L.Ed. 822, the court said: "A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock."

Once the relationship of stockholder to the bank is established, it continues until lawfully severed. The record in this case discloses no such severance. Appellee was, when the Bank closed, the owner of 12½ shares of stock in the Washington Park National Bank, and consequently is liable for his proportionate part of the assessment levied by the Comptroller of the Currency.

The judgment of the District Court is reversed, with directions to enter judgment in favor of appellant.