**WILLING v. DELAPLAINE et al.**

No. 18748.

District Court, E. D. Pennsylvania.

Sept. 14, 1937.

580

Samuel E. Kratzok, of Philadelphia, Pa., for plaintiff.

Arthur Littleton, of Philadelphia, Pa., for defendant Delaplaine.

Alexander Conn, of Philadelphia, Pa., for defendants Belzer.

Henry W. Balka, of Philadelphia, Pa., for defendant Taggart.

KIRKPATRICK, District Judge.

This is a suit at law brought by the receiver of the insolvent Sixth National Bank of Philadelphia to recover the amount of an assessment upon twelve shares of the stock of the Bank.

The original defendant was Mrs. Delaplaine, who was the record owner of the stock from some time prior to April 12, 1932 until February 15, 1933. Belzer and Company and Robert Taggart were brought in as additional defendants, and second additional defendant, respectively, by proceedings in conformity with the Pennsylvania Scire Facias Act of 1929 and its amendments, 12 P.S. § 141.

The Court directed a verdict in favor of Belzer and Company. At the close of the testimony, two specific questions were submitted to the jury and, upon the answers, with the consent of counsel, a verdict was taken for the original defendant, Mrs. Delaplaine, and for the plaintiff against Taggart; the second additional defendant, in the amount of $1,314. The Court reserved certain points of law, and the plaintiff has now moved for judgment against Mrs. Delaplaine notwithstanding the verdict. The additional defendant, Taggart, has moved for a new trial.

The national Banking Law provides that a stockholder who may have transferred his shares within 60 days next before "the date of the failure of such association to meet its obligations, * * * shall be liable to the same extent as if he had made no such transfer." 12 U.S.C.A. § 64. This statutory rule, however, has been relaxed by the courts to the extent that if a stockholder actually sells his stock and does all that he reasonably can do, judged by the standard of careful, prudent business conduct, to have the stock transferred on the books of the bank, he will be relieved of liability.

The first question is as to the date when the Bank failed to meet its obligations, within the meaning of the statute.

In Willing, Receiver, v. Pennsylvania Company et al., D.C., 21 F.Supp. 233, in an opinion filed herewith, I discussed this point and held, upon substantially the same evidence as that offered in this case, that February 28, 1933 is the date upon which the Sixth National Bank failed to meet its obligations, and that will be taken as the critical date for fixing record shareholders' liability for assessment.

The next question is as to the liability of Mrs. Delaplaine.

There is no dispute that the Fidelity-Philadelphia Trust Company was the authorized agent of Mrs. Delaplaine for the sale and transfer of her stock, and it will simplify matters to treat her and her agent as one person and refer to them collectively as "the vendor". The facts are that the vendor, shortly before April 12, 1932, got in touch with Belzer and Company, delivered to them the stock certificate for twelve shares, endorsed by Mrs. Delaplaine in blank, and received Belzer and Company's check for $539.52, being the price of the stock at $45 per share less $.48 for taxes. Thereafter, the vendor did nothing whatever in respect of the transfer of these shares of stock and had no communication with anybody about them.

Belzer and Company, on April 12, 1932, sold the stock to Robert Taggart (at $50 per share). The verdict of the jury upon competent evidence has established the fact that Robert Taggart was purchasing the stock for himself, and not, as he contended, for his brother. The certificate, still endorsed in blank, was delivered on April 12, 1932 by Belzer to the Bank, which gave Belzer a receipt for it, as follows: "Received of Belzer & Co., 12 shs. Sixth National Bank, ctf. No. 1014; n/o Louise Gessler Delaplaine, $600. Sixth Natl. Bank, Phila. c/o Robt Taggert, (Signed) E. G. Simonsen, Asst. Cashier." The words, "c/o Robt. Taggart," on the receipt, according to the only testimony on that point, meant that the account of Robert Taggart with the Bank was to be charged with $600, which was the price of the stock. They did not mean that the Bank was to transfer the

stock to Robert Taggart or issue a new certificate to him.

Thereafter (exactly when does not appear), the certificate was delivered by the Bank to Robert Taggart, who kept it, either in his own or his brother's possession or in their joint possession, until February 15, 1933, at which time it was surrendered to the Bank and, at the request of Robert Taggart, a new certificate for twelve shares was issued to James Taggart, his brother.

■ The rule requiring the vendor of the bank stock to do all that he reasonably can to have his stock transferred upon the books, in order to escape the liability for assessment, has been referred to. A preliminary question is: On a sale of stock, if the vendor does nothing, but the vendee does all that reasonably could have been done and still no transfer is actually effected, does the vendee's attempt to have the stock transferred enure to the benefit of the vendor? The answer is that it does. Of course, the vendor is not relieved in the event of the vendee's failure, but, pro hac vice, the vendee is his agent and, if the vendee does take the necessary steps, the vendor will be relieved. See Dellert v. Stallman, 7 Cir., 29 F.2d 236.

■ Did Belzer and Company, the vendees, do all that they reasonably could have done? I have referred to Belzer and Company as vendees because they apparently bought the stock for themselves and sold it for their own profit. Stated in general terms: Where the holder of a stock certificate, endorsed in blank, sends it to a bank with instructions which indicate that the price of the stock is to be charged to a third party, one of the bank's customers, without giving the bank specific instructions to transfer it, and without furnishing the bank with the name of the party to whom it is to be transferred, has such holder done all that he could reasonably have been expected to do to accomplish the transfer? In other words, can the bank be expected to infer from the fact that the stock is to be charged to a certain party that it is instructed to transfer it to him, and does it fail in its duty if it does not do so?

■ These questions almost answer themselves. Unless the bank is furnished with the name of the transferee or unless it appears in the power of attorney, obviously there is no duty upon the officers of the bank to transfer the stock to anyone. It is essential, in order to relieve a stockholder of statutory liability, that he direct the proper officers of the bank to make the transfer. If he has done that, he is justified in relying on their performance of their duty. If he has not, he has fallen short of taking the steps required to relieve him.

In Whitney v. Butler, 118 U.S. 655, 7 S.Ct. 61, 30 L.Ed. 266, the leading case upon the subject, the vendor was relieved. The general rule was, however, stated very clearly. The Court pointed out (page 63) that in the earlier cases in which the vendor had been held liable it did not appear "that the precaution was taken, after the sale of the stock, to surrender the certificates therefor to the bank itself, accompanied (where such surrender was not by the shareholder in person) by a power of attorney which would enable its officers to make the transfer on the register."

In the case now before the Court, the stock was surrendered to the Bank by Belzer and Company with a power of attorney to transfer, but, as no transferee was named and no direction given to transfer to anybody, the power of attorney was not one which would enable the officers of the Bank to make the transfer on the register.

The Court, in Whitney v. Butler, supra, further stated that, "where the seller delivers the stock certificate and power of attorney to the buyer, relying upon the promise of the latter to have the necessary transfer made, or where the certificate and power of attorney are delivered to the bank without communicating to its officers the name of the buyer, the seller may well be held liable as a shareholder until, at least, he shall have done all that he reasonably can do to effect a transfer on the stock register."

There is, in this case, the additional fact that some time after the Bank received the certificate from Belzer and Company, it did deliver it, still endorsed in blank, to Robert Taggart. This at least indicates that the Bank knew by that time that Robert Taggart had become the owner of the stock. Still, no instructions were given to register the stock in his name.

■ Under the statute, the record owner within the 60 days, may be held directly liable to the receiver regardless of who is the real owner. Where there has been a sale, there may be a liability on the part of the vendee to indemnify the vendor, or the vendee may be directly liable to the receiver if he is also the real owner, but the vendor will always be liable unless the

582

transfer has been registered subject to the one exception pointed out.

It is, therefore, clear that, taking all facts and inferences against the plaintiff (as must be done in view of the verdict), neither Mrs. Delaplaine nor her agent, Fidelity-Philadelphia Trust Company, nor her vendee, Belzer and Company, took the necessary steps to relieve her of her shareholder's liability. There was no evidence upon which the jury should have been permitted to find that she did. The plaintiff's first point, reserved by the Court, should have been affirmed, and the Court now directs that judgment in favor of the plaintiff and against Mrs. Delaplaine be entered upon it in the amount of $1,314.

The last question is as to the position of the additional defendants and the second additional defendant.

(a) *Jurisdiction.* Both these parties were brought into the case by Sci. Fa. proceedings, in each of which the allegation was that the succeeding defendant was liable over to the preceding defendant or alone liable to the plaintiff. The allegations of liability directly to the plaintiff are sufficient to give the Court jurisdiction of the proceedings against the additional defendants upon the ground that the suit is brought by an officer of the United States under the Banking Laws. This was ruled by Judge Maris in an opinion filed in Willing, Receiver, v. Pennsylvania Company, et al., referred to above, upon a motion to quash the Sci. Fa. on the part of the third additional defendant. There is no doubt of the correctness of that ruling. Hence, it is not necessary that diversity of citizenship should appear.

(b) *Liability.* Belzer and Company were never record stockholders at any time. They may have been, and probably were, real owners for a short period, but they were not real owners, of the stock at the time the Bank failed to meet its obligations, nor at the time the assessment was levied, nor is there any suggestion that they now are. Consequently, the statute imposing personal liability upon stockholders of national banks does not touch them.

Taggart's motion for a new trial is entirely without merit. The first ground alleged was the exclusion of certain testimony from one of the Bank's officers which counsel attempted to elicit upon cross-examination. The Court felt that it was not proper cross-examination and excluded it at that time. Later on, when Taggart was called, he was permitted to testify fully, and at considerable length upon the point, so that no possible harm could have been done him even if the first ruling had been erroneous, which it was not. As to the other ground, I confess that I am unable to find any ruling in the record upon which a complaint can be based. Counsel for the plaintiff was cross-examining Taggart and asked a question which was objected to. There was some confusion and several interruptions by counsel, and the Court said, "Wait a minute." The Court did not rule upon the objection, and the defendant did not answer the question.

The motion of Taggart, second additional defendant, for new trial is denied.